EDWARD KANE, Appellant, *v.* THE CITY OF BROOKLYN, Respondent.

The provision of the charter of the city of Brooklyn (§ 9, tit. 10, chap. 863, Laws of 1873) which declares that the assessment-roll "shall be duly sworn to by at least two of the assessors   *   *   *   to the effect that they háve together personally examined within the year past each and every lot or parcel of land," etc., does not require that all of the verifying assessors should depose that they together examined the property; it is sufficient if at least two of them swear that they did so examine.

Where, therefore, a roll was verified by all of the assessors, each severally deposing that at least two of them "have together personally examined," etc., *held*, this was a sufficient compliance with the statute; that it was not necessary to identify the two who made the examination.

The provision of the act of 1878, relative to the collection of taxes and assessments in the city of Brooklyn (Chap. 346, Laws of 1878), which requires that "the annual taxes shall be confirmed by the common council, the tax-roll signed by the board of supervisors, and the books delivered to the collector of taxes on or before the fifteenth day of November," was not designed to change the method of assessing the annual taxes, but to fix the time within which all the requisite steps shall be taken, and the reference to the signing of the roll by the board of supervisors is simply to the signing of the warrant annexed to the roll as prescribed by the Revised Statutes. (1 R. S. 396, § 37.)

Where, therefore, it appeared that a roll was signed by a majority of the then board of supervisors, and was duly approved and confirmed by resolution of the board, *held*, that this met the requirements of the statutes.

It is not essential to the validity of a return, made by the registrar of arrears, of taxes levied in the previous year remaining unpaid, that it shall be authenticated by a written certificate signed by the collector.

A mistake in the printed list, prepared by the registrar, in the name of the street on which the property to be sold is situated does not affect the validity of the sale; it is sufficient if the ward, block and lot numbers be stated. (Chap. 405, Laws of 1885.)

The notice of sale, in pursuance of which plaintiff's property was sold, was dated and first published on March fifteenth; the day of sale specified was April fourteenth. *Held*, that this was a compliance with the statutory provision (§ 1, chap. 405, Laws of 1885) requiring the sale to be at a time "not less than thirty days after the first publication."

(Argued June 11, 1889; decided June 25, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order

made at the May Term, 1888, which affirmed a judgment in favor of the defendant, entered upon the decision of the court on trial at Special Term.

This action was brought to remove a cloud upon the title of real property belonging to the plaintiff in the city of Brooklyn, which had been sold for unpaid taxes for the year 1884, upon the ground that the assessment of taxes thereon was void; to cancel the sale and the certificate and record thereof, and to restrain the city and its registrar from executing or delivering a deed to the purchaser.

The material facts are stated in the opinion.

*William J. Gaynor* for appellant. The assessment-roll was never sworn to as required by law. (Laws 1873, chap. 863, tit. 10, § 9.) The oath taken is not the oath prescribed by the statute, but a voluntary oath on which perjury could not be predicated. (*Shattuck* v. *Bascom*, 105 N. Y. 45.) If the oath in question were not merely voluntary, and one to which no penal responsibility would attach, yet it does not come up to the test of specific asseveration of official responsibility and duty done which the statute prescribes. (*Merritt* v. *Portchester*, 71 N. Y. 309–312; *People* v. *Hagadorn*, 104 id. 516; *Brevort* v. *Brooklyn*, 89 id. 128–132; *Shattuck* v. *Bascom*, 105 id. 39; *Ellwood* v. *Northrup*, 106 id. 172–185; *Westfall* v. *Preston*, 49 id. 439–455.) A failure of two or more of the assessors to make the specific oath required by the Brooklyn charter that they viewed the premises, leaves the supervisors without jurisdiction to levy the tax. (*Brevoort* v. *Brooklyn*, 89 N. Y. 128–132.) When the law requires the tax-roll or list to be accredited by the signatures to it of certain officials it can have no validity unless so accredited. The registrar had no authority to sell the plaintiff's land, he having no written return or certificate from the collector that the tax on it remained unpaid. (Laws of 1871, chap. 574, § 5; *Hilton* v. *Bender*, 69 N. Y. 75; Cooley on Taxation [2d ed.] 475; *In re Cameron*, 50 N. Y. 502.) The notice of sale of the plaintiff's lot was insufficient. (*Bank* v. *Ives*, 2 Hill, 355; *Butts* v.

*Edwards*, 2 Denio, 164.) The return to the registrar of arrears could not be made until after "the expiration of one year" from the date of the warrant. (*Bank* v. *Ives*, 2 Hill, 355; *Butts* v. *Edwards*, 2 Denio, 164; *Ex parte Dean*, 2 Cow. 605; *Cornell* v. *Moulton*, 3 Denio, 12; *Homan* v. *Liswell*, 6 Cow. 659; *Fairbanks* v. *Wood*, 17 Wend. 329; *Jackson* v. *Van Valkenburgh*, 8 Cow. 260; *Small* v. *Edrick*, 5 Wend. 137; *Columbia Road Co.* v. *Haywood*, 16 id. 422; *Young* v. *Whitcomb*, 46 Barb. 615; *People* v. *N. Y. C. R. R. Co.*, 28 id. 284; 2 R. S. [7th ed.] 1884.)

*Almet F. Jenks* for respondent. There must be substantial compliance with all requirements of the statute which are intended for the benefit or protection of the taxpayer. Absolute and literal compliance is not required. (*Westfall* v. *Preston*, 49 N. Y. 349; *Brevoort* v. *Brooklyn*, 89 id. 128; *B. & S. L. R. R. Co.* v. *Erie*, 48 id. 93.) The oath of the assessors was in compliance with the law. (Laws of 1873, chap. 873, tit. 10, § 9.) On this oath, as it stands, an indictment for perjury could be found if there had been any neglect of statutory duty. (Penal Code, §§ 96, 97, 98, 101; *Van Steenburgh* v. *Kortz*, 10 Johns. 167.) The notice was ample within the spirit of the law. (*In re U. E. R. R. Co.*, 112 N. Y. 62, 75.) The supervisors signed the tax-rolls within the contemplation of the law. (*Chamberlain* v. *Taylor*, 43 Hun, 24, 31; *Sorchan* v. *City of Brooklyn*, 62 N. Y. 339; *Low* v. *Weld*, 52 Me. 588; *Bailey* v. *Ackerman*, 54 N. H. 527.) The sale day was legal. The time is to be not less than thirty days after March fifteenth, the first day of publication. (Sedgwick on Stat. Law, 356; Laws of 1885, chap. 405, § 1; *Dutcher* v. *Wright*, 94 U. S. 553–560; *Sheets* v. *Seldon*, 2 Wall. 177, 190.) The notice for correction was sufficient. (Laws of 1873, chap. 873, tit. 10, § 8; Cooley on Tax. 364; *In re De Peyster*, 80 N. Y. 565, 572; *In re McMahon*, 102 id. 176, 184.)

VANN, J. The city of Brooklyn, according to its charter, has nine assessors, who are required each year to prepare an assessment-roll for every ward. Upon the completion of the

roll the statute provides that it "shall be duly sworn to by at least two of the assessors, according to the oath provided by law in regard to assessment-rolls in the different towns of this state, and, further, to the effect that they have together personally examined, within the year passed, each and every lot or parcel of land, house, building or other accessible property." (Laws 1873, chap. 863, tit. 10, § 9, p. 1330.) .

During the year 1884 the roll for the twenty-second ward contained an assessment upon lot five of block ninety-five, belonging to the plaintiff, for the sum of $404.27, upon a valuation of $15,000. He failed to pay this tax during the period required by law, and said premises were afterwards sold under the provisions of the charter relating to the collection of unpaid taxes, to the defendant, James Bryar, for the sum of $8,000. A certificate of sale in due form was delivered to the purchaser and duly recorded, and thereby, according to a special provision of law, became an apparent lien upon said premises. (Laws 1873, chap. 863, p. 1332.) Plaintiff claims that said sale and certificate are void, and his first point in support of this position is that the assessment-roll was not sworn to as required by the provisions of the charter. The affidavit annexed to the roll was signed by each of the nine assessors, who severally deposed and swore as follows: "That we have set down in the foregoing assessment-roll all the real estate situated in the twenty-second ward according to our best information, and that with the exception of those cases in which the value of the said real estate has been changed, by reason of proof produced before us, we have estimated the value of the said real estate at the sums which the majority of the assessors have decided to be the full and true value thereof." Then followed that portion which is not the subject of contention, and at the close was the part which is the chief source of controversy, in these words: "And, further, that at least two of the assessors have together personally examined within the year past each and every lot or parcel of land, house, building or other accessible property." (Laws 1873, chap. 863, tit. 10, § 9.) While it is not claimed that

the examination was not made as required, it is insisted that the formal proof thereof annexed to the tax-roll does not comply with the law. It is conceded that the affidavit conforms to the general requirement that it shall be in the form provided by law in regard to assessment-rolls in the different towns of the state, but it is claimed that it fails to meet the additional requirement already quoted from the city charter. Whether the affidavit upon its face appears to be probable or improbable, every part thereof must, in this action, be assumed to be true. The special provision of the statute, when analyzed, simply requires that the affidavit shall state that at least two of the assessors together made the requisite examination, and that they shall swear to it. The affidavit under consideration clearly states that at least two of the assessors together personally made such examination, so that the body thereof is in exact conformity to the statute. It contains all that the law specifically requires, substantially, if not literally, in the language of the section in question. But did the examining assessors swear to it? How can it be claimed that they did not, since all of the assessors swore to it? Nine, the entire number, swear that at least two of the nine made the examination. As all swear, the two or more who personally examined necessarily swear to the fact that they did so examine. When nine men state that two of their number did a certain act, the two who did the act state that they did it. While seven speak of the two, the two speak of themselves. It is true that the affidavit does not specify which two made the examination, and the law does not require that it should. It is provided that not less than two shall do the act specified and swear to it. Two did the act and nine, including the two, swore to it. It necessarily follows that the two who so acted swore to the fact. It is not a valid objection to the affidavit that more swore to it than were necessary, for the statute plainly authorizes more than two, and hence all to swear to it. It does not require that all of the verifying assessors should depose that they together, personally, examined the property, but that at least two should swear that they thus examined, and,

as already appears, the oath was taken by those assessors who, whether two or more, made the personal examination. On the record, as presented, it cannot be assumed that all of the assessors acting together as a board or body did not make the examination. Their affidavit, when literally read, indicates that they did, and so the learned General Term held. Even if it does not admit of this construction, the criticism that it fails to identify the two assessors who viewed the property, and hence that it operates as a protection against a prosecution for perjury, has no force, because the Penal· Code in defining that offense, declares that an unqualified statement of that which one does not know to be true is equivalent to a statement of that which he knows to be false. (§§ 96, 100.)

It is obvious that any assessor who united in the affidavit without personal knowledge that, at least, two of the board made the examination as stated, assumed a grave responsibility. We think that the affidavit is a substantial compliance with the statute, and that even if it does not identify the assessors who actually examined the property, it cannot be held up as a shield for official misconduct.

The plaintiff further claims that the tax upon his property was invalid because the "tax-rolls" were not signed by the board of supervisors. The basis of this objection is not found in the city charter nor in any general law relating to the subject of taxation, but in "An act relative to the *collection* of taxes and assessments in the city of Brooklyn." (Laws 1878, chap. 346.) This act is not a part of the general system for the assessment of taxes in that city, but, as its title indicates, was designed to aid in the collection of taxes after they had been duly assessed. It is regulative rather than creative in character. The first section relates to certain administrative details in the collection of taxes for local improvements. The second provides for the cancellation of assessments for such improvements under certain circumstances. The third section, after prescribing the rate of interest to be added to taxes, closes with this sentence: "The annual taxes shall be confirmed by the common council, the tax-roll signed by the board of supervisors and the books

delivered to the collector of taxes, on or before the fifteenth
day of November in each year, and the collection of taxes
shall be commenced on the first day of December in each year."
The remaining sections permit allowances to be made upon
taxes paid within a prescribed period, regulate the interest to
be paid upon redemption from tax sales, and authorize the
comptroller to transfer unused appropriations to the revenue
fund. A comparison of this statute with the city charter, and
with that part of the Revised Statutes relating to the assess-
ment of taxes, makes it apparent that the part quoted was not
designed to change the method of assessing the annual taxes,
but simply to fix the time within which all the steps required
by the general tax laws to finish the assessment should be
completed. It is a directory recital of those steps required by
existing laws, preliminary to making a change of time, when
the collection of taxes should commence; and in referring to
" the tax-roll signed by the board of supervisors," refers to an
act already provided by law. That act is the signing of the
warrant annexed to the tax-rolls, as prescribed by the Revised
Statutes. (2 R. S. [7th ed.] 996, § 37.) The Special Term
found that the warrants were annexed to the rolls unsigned,
and that thereafter they " were signed and sealed by a majority
of the then board of supervisors of the county of Kings," and,
by resolution, were duly approved and confirmed. The war-
rant in question refers to " the foregoing assessment-roll of the
twenty-second ward of the city of Brooklyn." We think that
this was all that was contemplated or required by the statute
when construed in connection with other legislation upon the
same subject.

The third objection urged against the validity of procedure
on the part of the city is that the collector did not make a
written return to the registrar of arrears of all unpaid taxes
levied during the previous year. It was found as a fact
by the trial court that, on the fifteenth of November, 1885,
the collector made a return to the registrar " of all items
of taxes levied in the previous year remaining unpaid,"
and that such return " was made on sheets corresponding

in size and ruling." It is not claimed that this return was incorrect in any respect, or that it did not contain all that the statute requires, but it is contended that it was invalid for the want of a written certificate signed by the collector. The statute directs the collector " to make a return to the registrar ;" that such return shall be made on sheets corresponding in size and ruling, and that it shall be the duty of the registrar to cause such sheets to be bound in volumes. It contains no other provision upon the subject. It does not require that any certificate shall be made, or that the return shall be authenticated in any manner. It simply commands that a return be made in a certain way of the unpaid taxes for the previous year. The return for the year 1884 was so made, consisting of fifteen books, officially prepared in the form required by law and delivered to the registrar, who receipted to the collector for the same " as containing the amounts of unpaid taxes and assessments in the 'tax-rolls' for the year 1884." We think that this was a compliance with the statute, and that if the legislature had intended that there should be a certificate, it would have required it by express terms. We cannot add a requirement which the law-making power has not seen fit to exact. It is a sufficient answer to the objection under consideration to say that it is not so written in the law.

The statute expressly provides that a mistake in the printed list of the property to be sold, prepared by the registrar for distribution among such as apply, as to the name of the person to whom the parcel of land is assessed, the assessed valuation thereof, or any other matter or thing thereinbefore required or authorized to be stated in the tax-list, shall not in anywise be an objection to the validity of a sale, provided the ward, block and lot numbers of the land are correctly stated in the said list. (Laws of 1885, chap. 405.) As the printed list in question correctly stated not only all of the particulars required, but others in addition, the partial error in the name of the street is no objection to the validity of the sale. When all of the prescribed descriptive facts are accurately given, the statute is satisfied. The name of the street upon which the property was

SICKELS—VOL. LXIX.   75

situated is not one of those facts. The statutory description does not include it, but is complete without it. Not only were the ward, block and lot numbers correctly stated, but also the name of the owner, and the location of the property upon one street. No one reading the entire description could have been misled, and there is no proof that the plaintiff, who is presumed to have known that his property was assessed, was not fully apprised of the facts, or that he did or omitted to do anything in reliance upon the slight misdescription. The description, as a whole, identified and described his property only. The object of said provision relating to mistakes was to protect the property owner by requiring certain unmistakable facts to be stated in the description and to protect the public from evil results on account of unimportant errors.

While all of the objections urged in behalf of the plaintiff have been carefully considered, it is deemed best to here notice but one other. The requirements of the statute in regard to the day of sale are, in substance, that the registrar shall publish a notice at least once in each week for four weeks in each of the corporation newspapers that the several parcels of land " will be sold at public auction to the highest bidder at a time and place specified in said notice, not less than thirty days after the first publication thereof." (Laws 1885, chap. 405, § 1.) The notice pursuant to which the plaintiff's property was sold is dated and was first published on the fifteenth of March, while the day of sale specified therein is April fourteenth. It is claimed that this notice was not sufficient because " the sale was, in fact, fixed to be on the thirtieth day after the first publication." The general rule for the computation of time in this state is to exclude the first day and to include the last. By excluding March fifteenth, the first day of publication, there still remain sixteen days in that month, which, when added to the first fourteen days of April, complete the statutory period. If the sale had taken place at a time less than thirty days after the first publication, it necessarily would have been held prior to April fourteenth. Not less than one day after would be March sixteenth; not less

than sixteen, March thirty-first; not less than seventeen, April first; not less than thirty, April fourteenth, which was the day of sale. The statute does not provide for a sale after the expiration of thirty days, but on a day not less than thirty days after a given day. Hence the authorities based upon statutes requiring an act to be done after the expiration of a specified period have no application.

As said in *Dutcher* v. *Wright* (94 U. S. 553, 560), search has been made in vain for a decided case in which it is held that both the day of the act and the day of the event shall be included in the computation, in order to ascertain the specified period of time.

We have not considered the effect of the curative act, passed in 1888 (chap. 583, tit. 10, § 9), as we think that the several statutes governing the assessment and sale in question have been substantially complied with.

The judgment should be affirmed with costs.

All concur.

Judgment affirmed.