JOHN P. MADDEN *et al. vs.* ISRAEL CHERNICK.

JULY 3, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.    This is a suit in equity brought in the names of John P. Madden and William F. Madden, brothers, for the purpose of nullifying two deeds purporting to convey the

latter's interests in two parcels of real estate to the respondent, purchaser of such interests at tax sales thereof. The bill of complaint, however, is signed only by William F. Madden; and an examination of the papers in the case and of the transcript indicates very strongly that John P. Madden never became a party. We shall therefore treat the suit as begun and prosecuted by William F. Madden alone, who will be referred to herein as the complainant.

The complainant relies upon certain alleged facts, most of which are stated in his bill, that Catherine H. Madden, the mother of these two men, died May 10, 1917, intestate and seized and possessed of these parcels of real estate, located in the city of Providence in this state and designated in the bill as parcels (a) and (b) respectively, subject, however, as to parcel (a) to a mortgage, made by her and signed also by her husband, Patrick J. Madden, to Providence Institution for Savings; that she left, surviving her, her husband, who thus became the tenant for life by right of curtesy of these two parcels, and also two sons, who thus acquired remainders in fee therein, the estates of father and sons, however, in parcel (a) being subject to the above-described mortgage; that, as of June 15, 1932, while the estates in these properties still remained the same, a tax was assessed by the city of Providence upon each of these properties to Catherine Madden as the owner thereof; that later, the complainant's father having meantime died and these taxes remaining unpaid, the properties were, by the city treasurer, advertised to be sold, for non-payment of such taxes, and, at an adjourned sale thereof held on June 26, 1933, the right, title and interest of the complainant and of Providence Institution for Savings in each of these properties were sold by the city treasurer to the respondent, for the amounts of such taxes assessed upon these properties respectively and interest and the expenses of the sale; and that deeds of said rights, titles

and interests in these properties respectively were delivered to the respondent and have been duly recorded and constitute clouds on the complainant's rights, titles and interests in these properties.

The complainant, in the bill of complaint and at the hearing of the case on its merits in the superior court, asserted that these deeds should be declared null and void and cancelled as clouds on his title, on the following grounds: (1) That the assessments of the taxes were void, because they were to Catherine Madden as the owner of the properties, although she had been dead for many years; (2) that the assessments of the taxes were void, because the taxes should have been assessed to Patrick J. Madden, since he then had a life estate in each of the parcels; (3) that the sales and deeds were invalid, because notice of the sales was not advertised in accordance with the statutory requirement that the sale be held after publication of notice "at least once a week for the space of three weeks", the original date for the sale being Thursday, June 8, 1933, at 10 o'clock a. m., and the only publications of notice which were relied on by the respondent being on the afternoons of May 18 and 25 and June 1, 1933; (4) that a notice of the sale was not served on the complainant, in accordance with the proper statutory requirements; and (5), as to parcel (a) of the properties in question, that a notice of the sale was not served on the holder of the mortgage on that parcel, in accordance with the proper statutory requirements.

There is practically no dispute as to the truth of the *facts* relied on by the complainant as above stated. As bearing on point (4) we should state, however, that the trial justice found, from evidence that supports this finding, that a notice of the time and place of the sale *was* served in due time by a representative of the city at the last and usual place of abode of the complainant.

As bearing on point (5), the mortgage above mentioned, covering parcel (a), was transferred by the mortgagee, by a deed dated and acknowledged August 8, 1932 and recorded in the land records of Providence March 2, 1933, to Margaret B. McCarthy; and yet no notice of the sale of that parcel was given to her, though apparently she was still the owner of the mortgage at the time when the properties were sold by the city for taxes.

The first two of these five points present really the same main contention urged by the complainant, *viz.*, that the assessments on both properties were invalid because they were assessed to Catherine Madden, long deceased, instead of to her estate or to her surviving husband, Patrick J. Madden, who was in possession of them as tenant for life. That they could legally have been assessed to him is evident from general laws 1923, chap. 59, sec. 6, which, as amended by public laws 1929, chap. 1388, reads as follows: "Estates in the possession of a tenant for life or for a term of ten or more years when by the terms of his lease such tenant for years is required to pay the taxes on such estate, may be taxed to such tenant, who, for the purposes of taxation shall be deemed the owner."

It is our opinion that in this statute the word "estate" was clearly used in the sense of "property" and not in the technical sense of an estate for life or for years. The taxes in question in this case would, then, have been validly assessed, if they had been assessed to Patrick J. Madden. The trial justice found that Catherine Madden's death had been recorded in the proper records of deaths in the city hall in Providence; that the records of the court of probate of that city had shown probate proceedings by which her husband, after her death, had been appointed guardian for the present complainant and his brother; and that the records of land evidence in that city had shown the conveyance by him, individually and as guard-

ian of the estates of these two sons, of a third property in Providence of which Catherine Madden had died seized, though the deed did not mention her name.

The trial justice also found that after the recording of this deed the tax assessors of Providence had changed the assessment of that third property from the name of Catherine Madden. From these different records he found that the tax assessors of that city should have learned of the death of Catherine Madden and should have changed the assessment of the properties involved in this case to her estate or to her husband or to him and their children. He therefore held that the assessments involved in this case were void and that hence the deeds in question should be held void.

With this reasoning we do not agree, because of G. L. 1923, chap. 59, sec. 6, above quoted, as amended, and sec. 8 of the same chapter, as follows: "If, in assessing real estate, the same be assessed by mistake to a person not the owner, such tax may nevertheless be collected from such real estate; *Provided*, the same be described so as to be identified, and the party having the record title have notice of such assessment."

Here the properties assessed were thus described and the party having the record title did have such notice. The evidence shows that the taxes, always assessed to Catherine Madden, were, from her death until 1930, always paid by her husband, who had a life estate in the properties and in our judgment comes within the above description of "having the record title", and who resided on one of the properties, where tax bills were sent, and who was also guardian of the estates of the two sons. Yet, during the whole period of his survivorship he never made a return for assessment of any of the properties of which he was tenant by the curtesy or notified the assessors of their mistakes in their way of assessing these properties.

Under these circumstances we are of the opinion that the assessments here involved come within the intent and meaning of the statute last-above quoted and that the complainant's father in his lifetime could not have taken advantage of the fact that the taxes now in question were mistakenly assessed to his deceased wife, when they should have been assessed to him; and that the complainant is equally precluded from taking advantage of that fact. We therefore are of the opinion that these taxes should have been held valid as against the interests of these two men in these properties.

The trial justice also sustained the complainant's contention (3) that notice of the original date for the sales had not been published once a week for three weeks before the sale. But in our opinion the rule of law which has been recognized by this court as the correct one, when some act has to be performed, and which is supported by the great weight of authority, is that in the computation the day on which one of the acts is to be performed is not to be counted, but the day for the performance of the other act and all the days between these two days are to be counted. In some of the cases the day on which the former act is to be done is the one excluded and in other cases it is the day on which the latter act is to be done, but the result is the same.

The matter is well discussed and a very large number of cases on both sides of the question are stated in a note in 49 L. R. A. beginning at page 193. On that page the rule is stated thus: "The general rule adopted under the old common law, as well as by the more modern cases and under the statutes, is that, in the computation of time one day, either the first or last, is included and the other excluded."

On the same page the rule is phrased thus: "Where any particular number of days not expressed to be clear days is prescribed, time is to be computed not to exclude both days, but to exclude the one and include the other." On page 201

this rule is stated as applying to statutes requiring notice of an event to be given by publication for a certain period before the event.

One of the strongest cases in accord with this rule is *Kane* v. *City of Brooklyn,* 114 N. Y. 586, 21 N. E. 1053, in which it is held that when a statute requires that a notice of a sale be published at least once a week for four weeks and that the sale take place not less than thirty days after the first publication, it is sufficient that the notice was first published on March 15, of a sale to be held on April 14, the rule applied being that the first day is to be excluded and the last day included. One of the leading cases that seem to follow a rule by which both days are excluded is *Ward* v. *Walters,* 63 Wis. 39, 22 N. W. 844.

We have found only two reported opinions of this court in which this question has been passed upon and they are both in favor of the former rule. *Millard* v. *Willard,* 3 R. I. 42; *Quinn* v. *McDole,* 28 R. I. 327. The weight to be given to the latter case is lessened because the notice was insufficient whichever rule might be applied and because, of the ten cases therein cited, this rule was applied in only five, some of which contain only *dicta* on this question; in two the rule excluding both the first and last days was applied and in three we cannot tell which rule was applied by the court.

In our judgment the former rule, both on principle and by the great weight of authority, is the correct rule to be applied in the instant case. We therefore find that there was proper notice by publication of the sales involved in the instant case.

As to point (4) the trial justice, as above stated, found from evidence that supported his finding, that due notice to the complainant of the sale was served on him. There-

fore the sale cannot properly be set aside as to the complainant for want of service of notice on him.

Point (5) relied on by the complainant in his bill, as to parcel (a), that no notice of its sale was served on the holder of the mortgage thereon, which had theretofore been transferred, by recorded deed, from Providence Institution for Savings to Margaret B. McCarthy, raises another question.

This may well be considered in connection with another point, raised by the complainant in his brief filed in this court, to the effect that, if the assessment of these taxes was valid, it covered the existing estates and interests of all persons having estates or interests in the respective properties, and yet the deeds by the city treasurer to the respondent purported to convey only the right, title and interest of the complainant and of the Providence Institution for Savings in the respective properties, although the latter had no right, title or interest then in either of the properties and John P. Madden had an estate in fee in each of the properties equal to that of the complainant, and Margaret B. McCarthy was the record owner of the mortgage on parcel (a).

As above shown, we are of the opinion that these taxes should be treated as if they had been validly assessed to Patrick J. Madden as life tenant. We are also of the opinion that, as an assessment against a life tenant covers also the owners in fee in remainder and their respective estates, the taxes in question were valid obligations of both William F. Madden and John P. Madden, as well as of their father, who was the primary debtor; and that, when the city treasurer took steps to enforce the payment of these taxes, they were secured by liens on the respective estates of the complainant and his brother in these properties, of which they had become seized and possessed on the death of their father.

But if the deeds in question were valid as to the complainant, they conveyed only his half interest in each of these properties for the payment of the *entire* tax thereon, and as to parcel (a) the deed thereto passed title to the respondent purchaser subject to the mortgage on that parcel. The result of this would be that the complainant could only redeem his half interest in each of these properties by paying the *entire* tax thereon with certain additions.

Another result, as to each of the parcels, of his interest alone being sold and conveyed for the entire tax and, as to parcel (a), subject to the mortgage, was that his *entire* interest was sold and conveyed, when it is quite possible that only a *part* of it would have been sold and conveyed, if it had been sold for only his half of the tax or if the interests of both owners had been sold for the entire tax. The case is even stronger as to parcel (a) because, if proper notice had been given to the holder of the mortgage thereon, that parcel might have been sold and conveyed free and clear of the mortgage. Moreover, the notice was for sales of both parcels and not merely for sales of the complainant's right, title and interest therein; and such sales might have been held and conveyances made accordingly, if proper service of notice had been made on the complainant's brother, but no claim was made of any such service.

Therefore, following the reasoning and conclusion of this court in the case of *Weaver* v. *Arnold*, 15 R. I. 53, which in our judgment are correct and applicable to the instant case, we are of the opinion that the complainant is entitled, in justice and equity, to have both the sales and the deeds annulled.

However, we are also of the opinion that in order to be entitled to this equitable relief the complainant must do equity himself, in accordance with the well-settled doctrine recognized and applied in *Allen & Reed, Inc.* v. *Investments,*

*Inc.,* 57 R. I. 457, 190 A. 447 and *McGuigan* v. *Fitzpatrick,* 60 R. I. 490, 199 A. 448. Obviously, on our view of the case, the complainant has been relieved by the respondent of some tax burdens which would otherwise have constituted obligations of the complainant. But the evidence before us does not enable us to tell how much money the complainant, in equity and good conscience, should pay to the respondent as a prerequisite to having each of these sales and deeds annulled.

We therefore are of the opinion that the decree appealed from should be reversed and that there should be entered in the superior court a new decree, which, among other provisions, should provide for ascertainment of the amount that should be paid by the complainant to the respondent as a prerequisite to the annulment of the deeds in question and their removal as clouds upon the complainant's title.

The respondent's appeal is sustained and the decree appealed from is reversed.

The parties may, on July 10, 1939, present to us a form of decree in accordance with this opinion, to be ordered to be entered in the superior court.

*Daniel A. Colton,* for complainants.

*Frank H. Wildes,* for respondent.