J-S44042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
ODELL EPPS, :
:
Appellant : No. 1410 EDA 2015

Appeal from the Judgment of Sentence May 1, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0005747-2014

BEFORE: FORD ELLIOTT, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED JUNE 28, 2016**

Odell Epps ("Epps") appeals from the judgment of sentence imposed

following his conviction of possession of a controlled substance (heroin), and

possession with intent to manufacture or deliver (heroin).[1] We affirm.

In its Opinion, the trial court set forth the relevant factual and

procedural background, which we adopt for purposes of this appeal. **See**

Trial Court Opinion, 1/19/16, at 1-4.[2]

On appeal, Epps raises the following question for our review:

Whether the lower court abused its discretion in denying [Epps's]
Motion to Suppress Physical Evidence[] where police made [a]
warrant[]less entry into [the] dwelling without probable cause
and exigent circumstances, rendering all evidence observed and
recovered as a result of the warrantless entry and subsequently

---

[1] **See** 35 P.S. §§ 780-113(a)(16), (30).

[2] With regard to the trial court's reference to an "unknown substance" found
in two open bags in an upstairs bedroom, our review of the record discloses
no determination as to the nature of the substance. **See** Trial Court
Opinion, 1/19/16, at 4.

executed tainted search warrant, fruit of the poisonous tree, and therefore, inadmissible[] under the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania State Constitution?

Brief for Appellant at 4.

Epps contends that Officer Carl Diaz's ("Officer Diaz") stated reason for entering 3018 N. 8th Street (hereinafter "the premises"), *i.e.*, that someone inside was shot and injured, did not give rise to reasonable suspicion, probable cause or exigent circumstances. *Id*. at 18. Epps points out that police had received similar anonymous calls on the two preceding days, with negative results, and asserts that the anonymous call on the date in question "was a mere pretext to justify a warrantless entry and search of the [premises]." *Id*. Epps claims that the initial warrantless search and seizure, which served as the basis for the issuance of a search warrant, violated Epps's constitutional rights under the United States Constitution and Article 1, Section 8 of the Pennsylvania State Constitution. *Id*. Epps argues that all of the evidence recovered during the execution of the search warrant constitutes fruit of the poisonous tree and should be declared inadmissible. *Id*. Epps contends that the trial court abused its discretion in determining that the issuing magistrate had a substantial basis for concluding that probable cause existed. *Id*. at 21. Epps asserts that, when Officer Diaz and Officer Jason Hernandez ("Officer Hernandez") entered the premises and conducted a search thereof, there was "no fair probability that they would encounter a gunshot victim or any other indicia of crime, where [p]olice had

responded to the same report of a possibly dead shooting victim the two previous days, with negative results." *Id*. at 23. Epps claims that the police "were on another wild goose chase[,] and there was no evidence of a shooting or other criminal activity observed by the [o]fficers before they forced their way inside." *Id*. at 23-24. Epps points to Officer Diaz's testimony that he heard a male voice before a visibly nervous Shavonna Baker told Officer Diaz that she was alone in the premises, and argues that this was "clearly insufficient corroborative evidence to support reasonable suspicion, let alone probable cause[] to justify a warrant[]less entry and search of the premises." *Id*. at 24. Epps contends that police had no credible or reliable independent evidence of drug activity to support the issuance of a search warrant. *Id*. at 25-26. Epps asserts that the absence of a credible source of information, independent of the illegal search and seizure conducted by Officers Diaz and Hernandez, tainted the search warrant, rendering all of the evidence recovered during its execution as fruit of the poisonous tree. *Id*. at 26-27.

The trial court set forth the relevant law, addressed Epps's issue, and concluded that both probable cause and exigent circumstances justified the initial search of the premises. *See* Trial Court Opinion, 1/19/16, at 4-5, 5-7. We agree with the sound reasoning of the trial court, which is supported by the record, and affirm on this basis. *See id*.

Judgment of sentence affirmed.

- 3 -

J-S44042-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2016



## IN THE COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## TRIAL DIVISION – CRIMINAL SECTION


| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0005747-2014 |
|---|---|---|
| | : | |
| v. | : | 1410 EDA 2015 |
| | : | |
| ODELL EPPS | : | |


## OPINION

FILED

COVINGTON, J.



CP 51 CR 0005747 2014 Comm. v. Epps, Odell L.
Opinion

7395105081

### Procedural History

On April 2, 2014, the Defendant was charged with Manufacture/Delivery/Possession with intent to Manufacture or Deliver (PWID) (35 § 780-113 §§ A30), Conspiracy (18 § 903), Possession of a Firearm Prohibited (18 § 6105 §§ A1) and Intentional Possession of a Controlled Substance by a Person Not Registered (35 § 780-113 §§ A16). On October 2, 2015, Defendant's Motion to Quash was granted in part, with respect to the charges of Conspiracy (18 § 903) and Possession of a Firearm Prohibited (18 § 6105 §§ A1).

On September 18, 2014, the Defendant's Motion to Suppress Evidence was heard and denied. On October 2, 2015, the Defendant's Motion to Reconsider the Ruling on the Motion to Quash was heard and denied.

On February 11, 2015, Defendant was found guilty following a jury trial, of Manufacture/Delivery/Possession with intent to Manufacture or Deliver (PWID) (35 § 780-113 §§ A30) and Intentional Possession of a Controlled Substance by a Person Not Registered (35 §

1

780-113 §§ A16. On March 1, 2015, the Defendant was sentenced to two to four years incarceration followed by six years of state probation.

On May 8, 2015, Defendant filed a timely Notice of Appeal of the Courts granting Defendant's Motion to Suppress.

## Factual History

Police Officer Carl Diaz testified at a suppression hearing that he and his partner, Officer Jason Hernandez, responded to a radio call on April 2, 2014, around 11a.m., in the area of 3018 North 8th Street in Philadelphia, Pennsylvania. N.T. 9/18/15 at 9-10. The radio call consisted of an anonymous tip of a person with a gun and a person shot inside of the home at 3018 North 8th Street, further stating there was possibly a male with a self-inflicted gun wound. *Id.* at 29. The officers approached the home and Officer Diaz knocked on the door but did not receive an answer. *Id.* at 15. After a second knock, Officer Diaz heard a male voice ask who was at the door. *Id.* Officer Diaz announced that it was the police and the male voice asked, "[t]he police?" *Id.* Officer Diaz responded, "[y]es, the police". *Id.* A few seconds later before Officer Diaz knocked a third time, a young female, Shavonna Baker, opened the front door. *Id.* Ms. Baker appeared to be nervous. *Id.* Officer Diaz asked if anyone was hurt or shot inside the home. *Id.* Ms. Baker hesitantly replied no. *Id.* Officer Diaz then asked if anyone else was present in the home, and Ms. Baker denied the presence of any other persons in the home. *Id.* A few seconds later, Office Diaz saw a male, Defendant Davenport, walk through the downstairs level of house, toward the rear. *Id.* Officer Diaz immediately summoned Defendant Davenport to the front door and asked if anyone was shot in the home and if anyone else was inside of the home. N.T. 9/18/15 at 18-19. Mr. Davenport and Ms. Baker exchanged glances and Mr. Davenport

2

responded that no one was hurt and that no one else was inside the home. *Id.* Officer Diaz informed Mr. Davenport and Ms. Baker that he and his partner, Officer Hernandez would check the home to confirm that there are no injured persons inside. *Id.*

The Officers instructed Mr. Davenport and Ms. Baker to sit down on the couch to speak to them, but then heard footsteps coming from the upper level of the home. N.T. 9/18/15 at 19. Officer Diaz could see the upstairs of the home from where he was standing and observed a male, Defendant Epps, quickly move from the middle room to the back room of the home. *Id.* Officer Diaz informed his partner, Officer Hernandez, of his observation and proceeded upstairs, where he smelled a pungent odor of marijuana. *Id.* at 22, 40. Once upstairs, Officer Diaz had drawn his gun and requested that Defendant Epps exit the back room with his hands up. *Id.* at 20. Defendant Epps complied, and the Officers frisked Defendant Epps for weapons then instructed him to go downstairs. *Id.* at 20-21. Officer Diaz then turned around and observed another male, Defendant Davis, in the front bedroom, with a minor child. *Id.* at 21. Officer Diaz instructed Defendant Davis to exit the room with his hands up. *Id.* Defendant Davis was subsequently frisked for weapons and sent downstairs with the minor child. *Id.*

Office Diaz proceeded to check the upper level of the home for additional people, safety threats, and injuries. *Id.* at 22-23. Office Diaz cleared all the rooms upstairs, but in the middle room he observed a scale on the window sill and a black plastic grocery bag containing plastic vials sitting on the floor near the window sill. *Id.* at 23-24. He further observed heroine paraphernalia on top of a dresser in the back room. *Id.* at 42-43. Officer Diaz then cleared the rest of the lower level of the home. *Id.* at 23. In the dining room, Officer Diaz saw a small, open box on top on the dining room table, which contained approximately fifteen (15) or more plastic cylindrical vials of a green leafy substance. N.T. 9/18/15 at 23. Then the Officers conducted a pat

3

down of the Defendants. *Id.* Officer Hernandez recovered two cylinders containing a green leafy substance and nine hundred and forty-eight U.S. Dollars ($948.00) from the hoodie pockets of Defendant Epps. *Id.* at 47. The Officers placed the three defendants and Ms. Baker in handcuffs while they called the Narcotics Strike Force. *Id.* at 23.

At approximately 6:30pm, on April 2, 2014, Officer Anne Rutherford of the Narcotics Strike Force ("NSF") served and executed a signed and approved search warrant for the residence at 3018 North 8th Street. *Id.* at 50-52. From the living room, the task force recovered a box on the dining room table containing twenty-four (24) clear cylinders containers with hydro marijuana. Upstairs, in the middle room, NSF recovered the Driver's License of Defendant Epps, two open bags with an unknown substance, later determined to be and a black shopping bag with five (5) clear baggies knotted at the top containing heroine. N.T. 5/15/2014 at 14-15. NSF also recovered unused packaging materials similar to the containers and bags in which the alleged marijuana and alleged heroin was packed. N.T. 9/18/15 at 53-54.

## Standard of Review

The applicable standard of review in an appeal from an order of suppression is well settled. The appellate court must ascertain whether the trial court's factual findings are supported by the record and whether the inferences and legal conclusions drawn from those facts are reasonable. *Commonwealth v. Smith*, 917 A.2d 848, 850 (Pa. Super. 2007). Furthermore, the appellate court is bound by the findings of fact of the suppression court, if the record supports those findings. *Id.* When the defendant appeals from a suppression order, the appellate court must follow "a clearly defined standard of review and consider only the evidence from the Commonwealth's witnesses together with the evidence of the defense that, when read in the

4

context of the entire record, remains uncontradicted." *Commonwealth v. Mack*, 953 A.2d 587, 589 (PA Super 2008).

## Statement of Errors:

Pursuant to the Defendant's 1925(b) Statement of Errors, the Defendant asserts one error on appeal: the Trial Court abused its discretion denying appellant's Motion to Suppress Physical Evidence where the was evidence obtained by a warrantless entry of a home without probable cause or exigent circumstances and thus the evidence uncovered under the subsequently issued warrant is fruit of the poisonous tree.

## Discussion

### I. The Motion To Suppress Was Properly Denied Because There Were Exigent Circumstances And Probable Cause To Justify Entry and Search Of The Home.

Entry of a home without a warrant is prohibited under the Fourth Amendment, unless probable cause or exigent circumstances exist. *Commonwealth v. Roland*, 637 A.2d 269 (Pa. 1994). Factors to be considered in determining whether exigent circumstances for warrantless search exist are: the gravity of the offense, whether the suspect is reasonably believed to be armed, whether there is an above and beyond clear showing of probable cause, whether there is strong reason to believe the suspect is within premises being entered, whether there is likelihood that the suspect will escape if not swiftly apprehended, whether the entry was peaceable, and the time of the entry. *Id.* Factors that may be considered in determining whether exigent circumstances justified warrantless search are whether there is hot pursuit of fleeing felon, likelihood that evidence will be destroyed if police take time to obtain warrant, or danger to police or other persons inside or outside dwelling. *Id.* Probable cause exists if, at the moment of

5

the arrest or search, the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the person arrested had committed, or was committing an offense, or there was contraband, weapons, or other evidence on the premises. *Henry v. U.S.*, 361 U.S. 98 (1959).

In the instant case, there is sufficient probable cause and exigent circumstances to justify the police officers' entry and search of the home. The totality of the circumstances and an evaluation of the factors, clearly demonstrate the officers had probable cause to believe that people were in danger inside the property. The initial anonymous tip of a person being shot, a person possessing a gun, and a possibly self-inflicted gunshot wound establish a gravely dangerous scenario. The gravity of a crime involving a shooting is high. Information of a possible shooting immediately demands police officers to exercise caution in investigating the safety of themselves and others, inside and outside the premises. The anonymous tip was reinforced by the circumstances of the officers' attempted investigation of the house. At first, a male voice answered through the closed front door, then after another knock, Ms. Baker answered the door, appearing nervous and hesitant to answer if anyone was shot inside the house. Although Ms. Baker denied any shooting inside the house, she also denied the presence of anyone else inside the property.

The officers then observed a male walk by behind Ms. Baker. As the officers had already observed a male walk by, contradicting Ms. Baker's statement, and had observed Ms. Baker acting nervous, it was reasonable for the officers to believe that Ms. Baker was herself in danger of specific harm from the unidentified armed man, and unable to answer truthfully. After the officers established the possibility of danger, they proceeded to make a peaceable entry, merely instructing Ms. Baker and Defendant Davenport to sit on the couch while they searched for any

6

possible danger. Given the extreme nature of the anonymous tip, the suspicious behavior at the entrance to the property, and the misrepresentation by one of the occupants are sufficient probable cause and exigent circumstances to justify the entry and search of the home.

## Conclusion

The Trial Court properly denied the Motion to Suppress Evidence. For the foregoing reasons the Court's denial of the motion should be upheld.

BY THE COURT:

Roxanne E. Covington, J.
January 19, 2016

7