**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Rebecca Y. KRISKO, Appellee.**

Superior Court of Pennsylvania.

Argued May 24, 2005.

Filed Sept. 19, 2005.

Alisa R. Hobart, Asst. District Atty., Reading, for Com., appellant.

Timothy Daly, King of Prussia, for appellee.

BEFORE: STEVENS, GANTMAN, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Berks County granting Appellee's motion to suppress.[1]  We reverse and remand to the trial court.

¶ 2 The record[2] reveals that on November 4, 2003, at approximately 1:48 p.m., Marlene and Bruce Smith were driving on Route 422 westbound when they observed behind them a white Lincoln, operated by Appellee, driving erratically.  The Smiths observed that on several occasions Appellee nearly hit the median separating the westbound and eastbound lanes of Route 422, that Appellee crossed the fog line by approximately two feet, and that Appellee prevented other vehicles from passing her by weaving into their lane.  The Smiths also observed that, when stopped at two different red lights, Appellee appeared to be either failing asleep or having some type of medical problem because her head

---

1.  The Commonwealth may appeal from a trial court's order suppressing evidence when it certifies in good faith that the suppression order will terminate or substantially handicap its prosecution of the case.  *See* Pa.R.A.P. 311(d).  As the Commonwealth has properly fulfilled this requirement by filling the re-quired certification, this appeal is properly before this Court.

2.  Unless otherwise noted, all facts are drawn from the notes of testimony from the September 15, 2004 suppression hearing.

rolled from side to side and her eyes were closed. Concerned for their safety, the Smiths used their cellphone to call 911.

¶ 3 At the request of the 911 operator, the Smiths allowed Appellee to pass them and continued to follow Appellee. Mr. Smith noted that he was traveling at seventy (70) miles per hour but still remained a car length behind Appellee. When Appellee exited Route 422 at the West Reading exit she jumped the curve and drove partially over the grass before returning to the road. Mr. and Mrs. Smith continued to follow Appellee as she pulled into the parking lot of Reading China and Glass and parked her car. Police officers from both West Reading and Wyomissing[3] arrived on the scene and confirmed with the Smiths that Appellee's car was the one that the Smiths had been following.

¶ 4 West Reading Police Officer Matthew Beighley parked his motorcycle behind Appellee's car. However, despite the fact that he had used his siren until he entered the parking lot and continued to use his police lights, Appellee seemed unaware of his presence and continued to rummage through bags in her car. Officer Beighley ultimately knocked on Appellee's window to get her attention, and Officer Beighley observed that Appellee's face was very flushed and her movements were abnormally sluggish. Officer Beighley briefly questioned Appellee and noted that her responses were very slow and that her manner of reacting was identical to that of other individuals he had stopped in the past for suspected driving under the influence of alcohol. However, Appellee denied that she had been drinking.

¶ 5 Officer Beighley asked Appellee to exit her car and attempted to administer a preliminary breath test but Appellee was unable to follow his directions. Police Criminal Complaint, Affidavit of Probable Cause. He then administered standard field sobriety tests, which Appellee failed. Id. Consequently, Officer Beighley arrested Appellee for driving under the influence and transported her to the hospital for a blood alcohol content test ("BAC") which registered at .20 percent alcohol. Id. Appellee was charged with violations of 75 Pa.C.S.A. § 3731(a)(1)[4] and 75 Pa. C.S.A. § 3731(a)(4).[5]

¶ 6 Appellee filed a motion to suppress her statements to the police and the BAC test results, and a hearing took place on September 15, 2004. On November 22, 2004, the suppression court granted Appellee's motion to suppress. The suppression court found the Commonwealth's version of the events to be credible[6] but found that Officer Beighley lacked reasonable suspicion to detain Appellee. The Commonwealth filed a timely notice of appeal, and it was ordered to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Accordingly, the Commonwealth filed the Rule 1925(b) statement, and the suppression court subsequently issued its opinion.

¶ 7 On appeal, the Commonwealth argues that the suppression court erred in granting the motion to suppress either because the evidence was obtained during a constitutionally permissible encounter or because Officer Beighley had reasonable suspicion to detain Appellee. For the reasons discussed below, we reverse and remand to the suppression court.

---

3. Reading China and Glass is part of the Vanity Fair Outlet Complex which is located in both West Reading and Wyomissing.

4. Now 75 Pa.C.S.A. § 3802(a)(1).

5. Now 75 Pa.C.S.A. § 3802(a)(2).

6. Appellee did not testify at the suppression hearing and did not present any evidence.

¶ 8 Where the Commonwealth appeals the adverse decision of a suppression court, we must consider only the evidence of defense witnesses and so much of the prosecution's evidence as remains uncontradicted. *Commonwealth v. Dewar*, 449 Pa.Super. 517, 674 A.2d 714, 716 (1996). Further, if the evidence supports the suppression court's factual findings, we may reverse only when the legal conclusions drawn from those facts are erroneous. *Commonwealth v. Pless*, 451 Pa.Super. 209, 679 A.2d 232, 233 (1996). However, it is exclusively the province of the suppression court to determine the credibility of the witnesses and weight to be accorded their testimony. *Commonwealth v. Fitzpatrick*, 446 Pa.Super. 87, 666 A.2d 323, 325 (1995).

¶ 9 This Court has held that there are three levels of interaction between citizens and polices officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super.2005).

A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.

In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Id.* (citation omitted).

¶ 10 In these matters, our initial inquiry focuses on whether the individual in question has been legally seized.

To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in the view of all surrounding circumstances, a reasonable person would believe that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained, in making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Strickler*, 563 Pa. 47, 58–59, 757 A.2d 884, 889–90 (2000) (citations omitted).

¶ 11 The Commonwealth first argues that no seizure took place and that Officer Beighley's initial interaction with Appellee was a mere encounter. We disagree.

¶ 12 In *Commonwealth v. Johonoson*, 844 A.2d 556 (Pa.Super.2004), we reasoned that a police officer's activating his overhead lights in response to a car already pulled off the road does not always indicate compulsory detention of the driver. Where a driver has reason to believe that an officer is simply attempting to render aid—for example, where the driver's car appears disabled—the overhead lights would signal official assistance and be a welcome sight to the driver. *Id.* at 562.

¶ 13 The driver in *Johonoson* had reason to believe an officer was assisting him, as the driver had voluntarily pulled off a rural road after traveling very slowly with hazard lights flashing at 3:00 a.m. We thus held that the officer did not transform a mere encounter into an investigative detention simply by stopping behind the driver's car and activating the overhead lights before alighting the patrol car. *Id.*

¶ 14 Activation of overhead lights are a strong indication of an investigative detention, however, where the driver of a stationary vehicle has no reason to believe that an officer is simply carrying out his duty of rendering aid. In *Commonwealth v. Hill,* 874 A.2d 1214 (Pa.Super.2005), a driver safely pulled his pickup truck to the side of a road at 1:00 a.m. after he saw distant but gaining headlights in his rear view mirror. The approaching car was, in fact, a patrol car, which pulled up behind the parked pickup and activated its overhead lights.

¶ 15 Ultimately charged with DUI, the driver testified at the suppression hearing that he intended to drive away when he saw a car pull behind him, but stayed where he was when the overhead lights were activated. The officer confirmed at the hearing that his use of overhead lights meant that the driver was not free to leave. Affirming an order to suppress, we held that stopping behind the pickup truck and activating overhead lights initiated an investigative detention where the driver, who had safely and uneventfully left the roadway, had no reason to believe that a police officer would stop to render aid. *Id.* at 1219.

¶ 16 In the case at bar, Appellee had no reason to believe that Officer Beighley and other officers activated their sirens and emergency lights as part of an assistance effort unrelated to law enforcement. Rather, her hazardous driving was the only plausible reason for the officers' interest in her vehicle at that moment. Looking at the totality of the circumstances, we find that a reasonable person in Appellee's position would not have believed that she was free to leave. Accordingly, we conclude that the officers' arrival with sirens and overhead lights flashing indicated an investigative detention of Appellee was underway.

¶ 17 Concluding that Appellee was seized within the meaning of the Fourth Amendment, we next must decide whether there were "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted that intrusion." *Commonwealth v. Lewis,* 535 Pa. 501, 509, 636 A.2d 619, 623 (1994) (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In denying that reasonable suspicion to detain Appellee existed, the trial court considered only that Officer Beighley had not personally observed conduct arousing reasonable suspicion of Appellee's criminality.

¶ 18 This Court, however, has held that a police officer need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including "tips" from citizens, to determine whether reasonable suspicion of criminality exists. *Commonwealth v. Wright,* 448 Pa.Super. 621, 672 A.2d 826, 830 (1996). Reasonable suspicion, like probable cause, depends upon both the quantity and quality of information possessed by police. *Commonwealth v. Lohr,* 715 A.2d 459, 462 (Pa.Super.1998). Thus, if a tip has relatively low reliability, more information is required to establish reasonable suspicion than if the tip were reliable. *Id.* A tip from an informer known to police may carry enough indicia of reliability to allow for an investigative stop, even though the same tip from an anonymous source would likely not have.

*Id.* Indeed, "a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk." *Id.* (citing *Commonwealth v. Jackson,* 548 Pa. 484, 490, 698 A.2d 571, 573 (1997)).

¶ 19 Here, the Smiths identified themselves to the 911 dispatcher, gave a continuing and detailed report of Appellee's most troubling manner of driving, and moments later personally met with responding officers and directed them to where Appellee had just parked her car. We conclude that the Smiths' high degree of accountability and their detailed, first-hand report of Appellee's very hazardous driving furnished Officer Beighley with the requisite reasonable suspicion to conduct an investigative detention of Appellee.[7]

¶ 20 Reasonable suspicion of Appellee's DUI continued throughout Officer Beighley's personal interaction with Appellee. After noting from his motorcycle that Appellee seemed oddly oblivious to the sirens and lights behind her, the officer dismounted his bike and encountered Appellee face to face, where he observed her flushed face and sluggish movements. All of these observations, in the officer's professional experience, were consistent with, though not dispositive of, intoxication. *See Commonwealth v. Johnson,* 734 A.2d 864, 869 (Pa.Super.1999), *appeal denied,* 560 Pa. 721, 745 A.2d 1219 (1999) (stating fact that suspect's behavior may be consistent with innocent behavior does not, standing alone, make detention and limited investigation illegal). At that stage, the quantum of evidence known to Officer Beighley permitted him to ask Appellee to submit to a portable breathalyzer test, which she could

not do, and to a field sobriety test, which she failed. Certainly, at no time during this interaction did reasonable suspicion of DUI fade. Accordingly, the trial court erred in suppressing the evidence obtained from the investigative detention.

¶ 21 Order is reversed. Case is remanded for further proceedings consistent with this decision. Jurisdiction is relinquished.

---

7. Indeed, in a case involving essentially identical facts of a known citizen filing a 911 report of another's hazardous driving in progress, we held that the citizen report was both sufficiently detailed and reliable to supply an officer, who had not personally corroborated the report, with probable cause to execute a traffic stop. *See Commonwealth v. Lindblom,* 854 A.2d 604 (Pa.Super.2004).