**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**David A. SMITH, Appellant.**

Superior Court of Pennsylvania.

Submitted June 12, 2006.
Filed Jan. 23, 2007.

Joseph D. Caraciolo, Harrisburg, for appellant.

Lance T. Marshall, Asst. Dist. Atty., Bellefonte, for the Com., appellee.

BEFORE: STEVENS, ORIE MELVIN, and POPOVICH, JJ.

OPINION BY STEVENS, J.:

¶ 1 Appellant, David A. Smith, appeals from a judgment of sentence entered in the Court of Common Pleas of Centre County on October 25, 2005.[1] We affirm.

¶ 2 Smith was arrested for drunk driving on January 13, 2005, after his erratic driving prompted another driver, Jay Witmer, to call 911. N.T. 7/1/05 at 12. Officer David Scicchitano was dispatched to respond to the call, and observed a vehicle which he believed to be the car he was seeking. Id. at 5–6, 15. As he approached the car, he observed it driving on the wrong side of the street. Id. at 6–7. When Officer Scicchitano activated his emergency lights, the car accelerated away from him, then suddenly pulled into a driveway. Id. at 7. Officer Scicchitano pulled in behind the car with his lights still flashing, and confirmed that the license plate on the car matched that given by Witmer's 911 call. Id. at 7–8. Smith exited the car, and quickly walked toward the house. Id. It was only after the officer yelled at him to stop that Smith returned to the car. Id.

¶ 3 Officer Scicchitano explained why he was there, and asked for Smith's drivers' license. Id. at 8–9. Smith responded that his drivers' license had been suspended as the result of a D.U.I. offense. Id. at 10. As the officer spoke with Smith, he detected a strong odor of alcohol on Smith's breath, and observed that Smith's eyes were bloodshot, his face was flushed, and his speech slurred. Id. at 9–10. Officer Scicchitano also observed an open twelve pack of beer and two crushed beer cans in plain view in Smith's car. Id. at 10. Officer Scicchitano asked Smith to perform field sobriety tests, then arrested him for driving under the influence of alcohol. Id. at 10–11. A blood test was performed less than an hour after the initial 911 call was received, revealing a blood alcohol content of .124%. Id. at 12.

¶ 4 Prior to trial, Smith filed an omnibus pre-trial motion, which was denied on July 28, 2005, following a hearing. In addition, he filed a "Motion for Sanctions for Violation of Duty to Disclose," alleging that the Commonwealth destroyed a videotape which would have provided exculpatory information corroborating Smith's assertions that his driving was not unsafe or an indication that he was intoxicated, as well as rebutting the evidence which Smith believed the Commonwealth planned to introduce at trial against him. Motion filed 7/19/05. During the resulting hearing on September 13, 2005, the Commonwealth admitted that the police had inadvertently erased the videotape. N.T. 9/13/05 at 4. Smith requested as a remedy that Officer Scicchitano be precluded from testifying as to Smith's driving, while the Commonwealth suggested that a curative jury instruction was the appropriate remedy. Id. at 3, 5. On September 15, 2005, the trial

1. Smith's appellate brief erroneously indicates that he is appealing a July 28, 2005 order which denied his pre-trial motion.

court filed an order granting Smith's Motion for Sanctions, indicating that "the Jury shall be instructed that the evidence was lost by the Commonwealth, and that Jury be charged consistent with the Standard Jury Criminal Jury Instruction 3.21(b), Failure to Produce Document or Other Tangible Evidence at Trial." Order filed 9/15/05.

¶ 5 The case was never heard before a jury, however. Instead, a non-jury trial was conducted on September 22, 2005, after which Smith was convicted of violating 75 Pa.C.S.A. § 3802(a)(1) and (b), relating to driving under the influence of alcohol; 75 Pa.C.S.A. § 6503.1, relating to habitual offenders; 75 Pa.C.S.A. § 1543(B)(1.1)(ii), pertaining to Driving while operating privilege is suspended or revoked; and 75 Pa.C.S.A. § 1501(a), pertaining to driving without a valid license. On October 25, 2005, he was sentenced to one year ninety days' to two years ninety days' imprisonment, and one years' probation.

■■■ ¶ 6 He appeals his sentence, raising five issues for our review. Smith's first two claims assert that the trial court erred in denying his motion to suppress. We review challenges to the denial of a suppression motion under the following well-established standard:

When we review the ruling of a suppression court, we must ascertain whether its factual findings are supported by the record and whether the inferences and legal conclusions drawn from those facts are reasonable. *Commonwealth v. Lewis,* 535 Pa. 501, 504, 636 A.2d 619, 621 (1994). Where the

defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense that remains uncontradicted in context of the whole record. *Id.* If there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are in error. *Id.*

*Commonwealth v. Petroll,* 558 Pa. 565, 574–575, 738 A.2d 993, 998 (1999).

¶ 7 Specifically, Smith argues that Officer Scicchitano was required to have probable cause to effectuate a valid stop, and that neither the officer's own observations nor the 911 call provided such probable cause. Appellant's brief at 7–10. To support these claims, Smith cites to, *inter alia, Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (Pa.2001) and *Commonwealth v. Battaglia,* 802 A.2d 652 (Pa.Super.2002). Smith is incorrect that Officer Scicchitano was required to have probable cause to effectuate a valid stop, however, since the probable cause standard enunciated by *Gleason* has been superseded by 75 Pa.C.S.A. § 6308(b), which was amended on September 30, 2003, effective February 1, 2004. *Martin v. Commonwealth,* 588 Pa. 429, 905 A.2d 438, 450 (2006) (Eakin, J. Concurring) ("Effective February 1, 2004, the General Assembly 'lowered the quantum of cause an officer must possess from "articulable and reasonable grounds" [which is equivalent to probable cause] to "reasonable suspicion" to conduct a vehicle stop.' ").[2]

2. Section 6308(b) now states:
   Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has **reasonable suspicion** that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

¶ 8 Clearly, the January 15, 2005 stop in question is governed by the amended version of Section 6308, thus Officer Scicchitano was only required to possess reasonable suspicion in order for the stop to be valid.[3] Smith does not dispute that Officer Scicchitano had reasonable suspicion to stop him, and Smith is entitled to no relief on his arguments that we should apply the pre-amendment probable cause standard to reverse the trial court.[4] For

75 Pa.C.S.A. § 6308(b) (emphasis added). In its previous form, the statute required the officer to have "articulable and reasonable grounds to suspect a violation." 75 Pa.C.S.A. § 6308(b) (1998), *amended by* 75 Pa.C.S. § 6308(b) (2004). As a panel of this Court explained in *Commonwealth v. Ulman*, 902 A.2d 514 (Pa.Super.2006):

> [T]he Legislature amended 75 Pa.C.S.A § 6308(b) to clarify that whenever an officer "has **reasonable suspicion** that a violation of [the Motor Vehicle Code] is occurring or has occurred, he may stop a vehicle[.]" 75 Pa.C.S.A. § 6308(b) (emphasis added). *[Commonwealth v. Sands*, 887 A.2d 261, 267 (Pa.Super.2005)]. The legislative history of this amendment clearly indicates that it was the Legislature's intent to authorize police officers to stop a vehicle based upon a "reasonable suspicion" that the driver has violated the Vehicle Code, rather than the heightened standard of probable cause.

*Ulman*, 902 A.2d at 518.

**3.** We note that in denying Smith's suppression request, the trial court cited to the earlier version of Section 6308(b), and went on to find that the stop was supported by probable cause in the form of the tip from Jay Witmer and the officer's own observations. Opinion and Order filed 7/28/05 at 3–4. The trial court's reliance on the earlier version of the statute does not alter our affirmance of his decision, as we may do so on any grounds. *Commonwealth v. Van Winkle*, 880 A.2d 1280, 1285–1286 (Pa.Super.2005).

**4.** Even if Smith had argued that Officer Scicchitano lacked reasonable suspicion, we would find that the evidence shows otherwise. "To establish grounds for 'reasonable suspicion' ... the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." *Commonwealth v. Little* 903 A.2d 1269, 1272 (Pa.Super.2006).

In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. *In the Interest of D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (2001). In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." *[Commonwealth v. Cook*, 558 Pa. 50, 57, 735 A.2d 673, 676 (1999)] (citation omitted). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Cook*, 735 A.2d at 676.

*Commonwealth v. Hughes*, 908 A.2d 924, 927 (Pa.Super.2006). With regard to information provided by a tip, a panel of this Court recently explained that:

> For a tip to carry enough indicia to establish reasonable suspicion, a court must look at the quality and the quantity of the information possessed by the police at the time of the stop. *Commonwealth v. Krisko*, 2005 PA Super 320, 884 A.2d 296, 300 (Pa.Super.2005). A tip that comes from an informer known to the police may carry enough reliability to allow for an investigative stop, even though the same tip from an anonymous source would not. *Id.* Further, this Court has held that an officer does not need to personally observe the illegal or suspicious conduct but may rely on information from third parties, as long as that information is specific in nature and the informant is reliable. *Commonwealth v. Korenkiewicz*, 1999 PA Super 326, 743 A.2d 958, 964 (Pa.Super.1999).

*Commonwealth v. Emeigh*, 905 A.2d 995, 998 (Pa.Super.2006).

Here, reasonable suspicion was created as the result of Jay Witmer's 911 call, and Officer Scicchitano's own observations of Smith driving on the wrong side of the road, and accelerating away from the police cruiser when Officer Scicchitano activated its overhead lights. *Hughes, supra; Emeigh, supra;*

the forgoing reasons, we decline Smith's invitation to overturn the denial of his suppression motion on these grounds.

■ ¶ 9 Smith's third and fourth arguments raise constitutional challenges. When an appeal raises the constitutionality of a statute, an appellate court's scope of review is plenary. *Commonwealth v. Killinger*, 585 Pa. 92, 94, 888 A.2d 592, 593 (2005); *Commonwealth v. Noel*, 579 Pa. 546, 550, 857 A.2d 1283, 1285 (2004). "There is, however, 'a strong presumption that acts of the General Assembly are constitutional, and this Court will not declare such acts unconstitutional unless they clearly, palpably, and plainly violate the constitution.' " *Killinger*, 585 Pa. at 94, 888 A.2d at 593.

■ ¶ 10 In his third claim, Smith argues "75 Pa.C.S.A. § 3802 et al." violates the substantive due process rights contained in the Pennsylvania and/or United States constitutions. Appellant's brief at 10. The majority of Smith's argument in this regard purports to challenge Section 3802 as a whole. *Id.* at 10–16. He may only challenge the portions of the statute under which he was convicted, however. *Commonwealth v. Spease*, 2006 PA Super 323, *¶ 11 n. 4, 911 A.2d 952, 957 n. 4, 2006 Pa.Super. Lexis 3775, **10 n. 4 (Filed 11/13/06) (*citing Commonwealth v. McCoy*, 895 A.2d 18, 32 n. 8 (Pa.Super.2006) (reiterating that one must be affected by the particular provision of a statute in order to have standing to challenge it)). *See also Commonwealth v. Semuta*, 902 A.2d 1254, 1260 (Pa.Super.2006).[5] As we noted above, Smith was convicted of violating Section 3802, Subsections (a)(1) and (b).[6] We thus turn to Smith's specific challenges to those subsections.

¶ 11 He first asserts that "Section 3802 is unconstitutionally vague and overbroad because it penalizes protected conduct, and is drafted in such a way as to be ambiguous in meaning, leaving a reasonable person unsure as to what conduct is prohibited." Appellant's brief at 12. Smith is entitled to no relief on these grounds, as this exact argument was recently rejected by a panel of this Court in *Semuta*.[7] In

*Commonwealth v. Barber*, 889 A.2d 587, 594–595 (Pa.Super.2005) (*citing Commonwealth v. Swartz*, 787 A.2d 1021 (Pa.Super.2001) (*en banc*); *Korenkiewicz*, supra; *Commonwealth v. Janiak*, 368 Pa.Super. 626, 534 A.2d 833 (1987)); *Commonwealth v. Spencer*, 888 A.2d 827, 830–831 (2005).

5. In *Semuta*, the Court explained that:
  Appellant was charged only with 75 Pa. C.S.A. § 3802(a)(1) and 75 Pa.C.S.A. § 3802(b), yet he challenges Section 3802 in its entirety. An individual launching a constitutional challenge to a statute must be injured by it. He cannot challenge it in the abstract. Appellant was not charged with each subsection of Section 3802; thus, we find he may not challenge all of it.
  *Semuta*, 902 A.2d at 1260 n. 6 (citations omitted).

6. Subsection 3802(a)(1) states that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1). Subsection 3802(b) states that:
  [a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle. 75 Pa.C.S.A. § 3802(b).

7. *Semuta*, convicted of violating Subsection 3802(b), argued that Section 3802 is vague and overbroad, "because it penalizes protected conduct, and is drafted in such a way as to be ambiguous in meaning, leaving a reasonable person unsure as to what conduct is prohibited." *Semuta*, 902 A.2d at 1260.

finding the claim meritless, the Court explained:

> When considering a constitutional challenge to Section 3802 on the basis that it is vague, overbroad, and allows for arbitrary enforcement in violation of substantive due process rights guaranteed under the Pennsylvania and United States Constitutions, this Court recently concluded that this provision of the Vehicle Code is not vague or overbroad in that "[i]t gives a person of ordinary intelligence notice that he may not drive after imbibing a sufficient amount of alcohol such that he is incapable of driving safely." *Commonwealth v. McCoy*, 2006 PA Super 33, 895 A.2d 18, 31 (Pa.Super.2006). We also determined the provision is not overbroad since it does not punish any constitutionally protected activity and reasoned our Supreme Court has recognized that charts are widely available which indicate the amount of alcohol individuals of varying weights may consume, and that an individual of ordinary intelligence who chooses to over imbibe and drive is certainly aware such conduct is prohibited. *McCoy*, 895 A.2d at 32 (*citing Commonwealth v. Mikulan*, 504 Pa. 244, 252, 253, 470 A.2d 1339, 1343 (1983) (plurality)). As such, we find no merit in this claim.

*Semuta*, 902 A.2d at 1260–1261.

¶ 12 Smith next argues that the statute's inclusion of the language "within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle," renders it unconstitutionally vague because it encourages arbitrary and discriminatory enforcement. Appellant's brief at 13. This too was found to be an unavailing challenge by the *Semuta* Court as follows:

> Appellant also argues Section 3802 encourages arbitrary and discriminatory enforcement and is overbroad in that an individual can be found guilty of violating it without ever having driven at a time when his BAC was above 0.08%, because the statute punishes individuals for the amount of alcohol measured in their blood up to two hours after they have driven. Brief for Appellant at 18–19. In recently dismissing a similar argument, this Court reasoned such a contention is more akin to an over breadth challenge to the statute and stressed:
>
> > "that there is no longer a statutory provision such as former 3731(a)(4) which provides that a person may drive if his BAC is below a particular BAC *at the time of driving*. Rather, the pertinent question under 3802(a)(2), (b), and (c), is 'what is the individual's BAC as determined by a test taken within two hours of driving?' Further, 'there is no constitutional, statutory or common law right to the consumption of *any* quantity of alcohol before driving.' Accordingly, Appellant's arguments in this regard must fail."

*Commonwealth v. McCoy*, 2006 PA Super 33, 895 A.2d 18, 33 (Pa.Super.2006) (citation omitted) (emphasis in original). In light of this authority, we find this aspect of Appellant's third argument to be without merit.[7]

---

7. In his Brief, Appellant relies upon *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996) and claims that as the Supreme Court examined the issue of vagueness and over breadth and found a similar statute to be unconstitutional on those grounds, that decision should control herein. Nevertheless, this Court in *McCoy*, *supra*, noted that "[i] n the amended DUI law, Section 3802, the confusion caused by contradictory Sections 3731(a)(4) and (a)(5) has been eliminated. Section 3802 no longer has a provision

like 3731(a)(4). Thus we conclude *Barud* is not controlling." *Id.* at 32.

*Semuta*, 902 A.2d at 1261.

¶ 13 The veracity of these conclusions is confirmed by the even more recent holding in *Spease*, 2006 PA Super 323, ¶ 11, 911 A.2d 952, 957, 2006 Pa.Super. Lexis 3775, **10, in which the Court explained as follows:

> Appellant also contends section 3802(c)[8] potentially punishes those who may not have achieved the prohibited blood alcohol content (BAC) at the time of driving but reached those levels within two hours after driving. In other words, section 3802(c) does not require proof that the person's BAC was above a prohibited level *at the time of driving*. Appellant's brief at 16–18. This over breadth challenge effectively is an argument that the statute punishes conduct which is in some way protected. We rejected this specific challenge in *McCoy, supra,* and we will not rehash the issue here.
>
> . . .
>
> Appellant also contends section 3802 is unconstitutionally vague since it does not provide a reasonable standard by which an ordinary person may contemplate future conduct. A panel of this court recently addressed this very argument and concluded section 3802(c) is not void for vagueness. *Commonwealth v. Thur*, 906 A.2d 552, 2006 PA Super 208 [*P23–*P35].

Thirdly, appellant maintains the new DUI law permits and promotes arbitrary and discriminatory enforcement since a driver is subjected to different penalties pursuant to section 3804 based upon the "arbitrary and the discriminatory action of police in dictating the 'time' for the driver to take the [chemical] test." Appellant's brief at 20. It is the time for taking the test, appellant argues, that renders the statute unconstitutional and promotes arbitrary action by the government. *Id.* In *McCoy,* we rejected the suggestion that an officer will exercise discretion by somehow knowing when the person's BAC will peak and will time the chemical test accordingly. Record, Nos. 33, *citing Mikulan, supra* at 253, 470 A.2d at 1343 n. 8. Also, in *Thur, supra,* we specifically held that it is constitutionally permissible to require a person to monitor his or her conduct so as to ensure that he or she does not have a prohibited blood alcohol level *at any time within two hours of driving. Thur* at [*¶ 35]. If appellant fails to do so, the risk of erroneous judgment is placed squarely and properly upon the person who chooses to drink and drive. *Thur* at [*¶ 29]. We thus reject appellant's argument on this issue.

*Spease*, 2006 PA Super 323, *¶ 11–¶ 13, 911 A.2d 952, 957–58, 2006 Pa.Super. Lexis 3775, **10–13.

■ ¶ 14 In addition to the above claims, under the argument heading alleg-

---

8. In *Spease*, the appellant and challenged the "two hours" language after she was convicted of violating Subsection 3802(c), Subsection (c), which pertains to "Highest Rate of Alcohol," differs from Subsection (b), pertaining to "High Rate of Alcohol," only in the blood alcohol content to which it applies. Subsection 3802(c) states that:

[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. 3802(c).

ing the unconstitutionality of Section 3802, Smith lumps a claim that Section 3804 "should be stricken as a violation of the due process clause of both the United States and Pennsylvania Constitutions because of its vagueness." Appellant's brief at 16–17. Since this allegation is not contained in Smith's court ordered Rule 1925(b) statement of matters complained of on appeal, it is waived for purposes of appeal. *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998).[9]

¶ 15 Smith next asserts that Section 3802 violates an individual's right to be represented by an attorney. Appellant's brief at 17. Specifically, he contends that "[t]he request to consent to chemical testing is a post-arrest critical stage of the prosecution and therefore the accused has a right to counsel under both the Unites States Constitution and Pennsylvania Constitution." Appellant's brief at 20. This argument was rejected by the *Semuta* Court, which explained as follows:

Appellant next contends his right to counsel which is guaranteed under the United States and/or Pennsylvania Constitutions was violated as the "request for chemical testing is a post-arrest confrontation between the accused and the officer, whereby the accused is required to make a decision of great legal consequence." Brief for Appellant at 24–25. In [*Commonwealth v. Ciccola,* 894 A.2d 744, 747 (Pa.Super.2006)], this Court addressed the issue of whether a person's sixth amendment right to counsel is violated if he has no right to consult with counsel before deciding to consent to a chemical test requested by a police officer. We acknowledged that the sixth

amendment right to counsel attaches at critical stages of a criminal proceeding and concluded that the decision to submit to a BAC test is not such a stage. *Ciccola,* 894 A.2d at 749–750 (Pa.Super.2006). We reasoned that although the decision to submit to a BAC is an important, tactical one, it is made during an encounter involving the gathering of evidence and does not affect the fairness of trial in the sense that a defendant will have the ability to have counsel's assistance in cross-examining witnesses and in planning trial strategy. *Id.* Thus, we concluded the decision to submit to a BAC was not a critical proceeding for the purpose of the right to counsel. *Id. See McCoy,* 895 A.2d at 28. Thus, in light of the aforementioned authority, we find Appellant is not entitled to relief on this basis.

*Semuta,* 902 A.2d at 1262. As such, Smith is entitled to no relief on this claim.

¶ 16 Smith's final allegation is that the trial court "erred in not granting the requested relief in response to the discovery sanctions for the Commonwealth's failure to properly preserve evidence." Appellant's brief at 21. As we noted above, the trial court granted Smith's request for sanctions, but not in the form he requested. Smith acknowledges that Pa. R.Crim.P. 573 gives the trial court discretion to enter such order as it deems just under the circumstances. Appellant's brief at 22. As the trial court explained:

This court heard argument on this matter, and believes it properly dealt with the situation. The police recycled the video tape, not the Commonwealth. As

---

9. Even if the claim were included in the Rule 1925(b) statement, Smith lacks standing to raise it. *Semuta, supra.* In *Semuta,* the appellant asserted an identically worded allegation. The Court noted, however, that because the appellant was not convicted under that

Section, he lacked standing to raise a challenge to its constitutionality. *Semuta,* 902 A.2d at 1261–1262 (*citing Commonwealth v. Ciccola,* 894 A.2d 744, 747 (Pa.Super.2006); *Commonwealth v. Dodge,* 287 Pa.Super. 148, 429 A.2d 1143, 1146 (1981)).

such, the recycling of the video was not prosecutorial error; rather, it was police oversight. This Court believes it made adequate and appropriate sanctions on the Commonwealth by informing both parties it planned on giving the jury a cautionary instruction. It should also be mentioned that there was corroborating evidence from the police officer and an eye witness to show Defendant's driving was in violation of the Motor Vehicle Code. Based on these observations, this Court believed the video evidence would not fully exonerate Defendant of guilt. This Court did not believe it was fair and just to essentially throw out the entire case because of a police oversight. As such, this Court deemed its intent to give the jury a cautionary instruction was a proper sanction in light of the circumstances.

Opinion filed 12/6/05 at 3. We agree.

■ ¶ 17 The trial court was able to heed the warning that it would have given to a jury—i.e. you may infer that the evidence in question was unfavorable to the Commonwealth. The trial court then properly weighed that inference against Officer Scicchitano's testimony and the evidence surrounding the 911 call. We find that the trial court properly concluded that the failure to produce the tape affected the weight to be accorded Officer Scicchitano's testimony, not the admissibility of that testimony. We find no reversible error in the remedy selected by the trial court.

¶ 18 For the foregoing reasons, we affirm the Judgment of Sentence entered October 25, 2005.

¶ 19 Affirmed.