J-S94045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| NICHOLAS PAUL PITZER | |
| Appellant | No. 685 MDA 2016 |

Appeal from the Judgment of Sentence April 18, 2016
in the Court of Common Pleas of Adams County Criminal Division
at No(s): CP-01-CR-0000718-2015

BEFORE: LAZARUS, RANSOM, AND FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED JANUARY 30, 2017**

Appellant, Nicholas Paul Pitzer, appeals from the judgment of sentence entered in the Adams County Court of Common Pleas of sixty months' intermediate punishment for driving under the influence of alcohol ("DUI"). Appellant contests the trial court's denial of his motion to suppress evidence. We affirm.

On March 29, 2015, following a traffic stop, Appellant was arrested and charged with two counts of DUI and several summary offenses.[1] On August 19, 2015, the Commonwealth filed a criminal information charging Appellant with DUI-highest rate of alcohol[2] and DUI-general impairment.[3]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth subsequently withdrew the summary offense charges.

[2] 75 Pa.C.S. § 3802(c). This was Appellant's second DUI offense.

Appellant filed a motion to suppress evidence based on a lack of reasonable suspicion or probable cause to stop his vehicle. On December 29, 2015, following an evidentiary hearing, the trial court denied Appellant's motion to suppress.

The trial court made the following findings of fact in its order denying suppression:

> 1. On March 29, 2015, at approximately 1:58 a.m., Pennsylvania State Police Trooper Severin Thierwechter, while on duty in a marked police vehicle and in full uniform, was traveling west on State Route 234 in Adams County, Pennsylvania.
>
> 2. While traveling through the intersection of State Route 234 and Yellow Hill Road, Trooper Thierwechter observed a vehicle traveling north on Yellow Hill Road which appeared to him to be in the left lane of travel.
>
> 3. A dash cam video in the trooper's vehicle includes evidence of a vehicle traveling north on Yellow Hill Road in close proximity to the road's intersection with State Route 234. The video does not corroborate or refute Trooper Thierwechter's observations.
>
> 4. At the location of the subject incident, State Route 234 travels in an east-to-west direction. Yellow Hill Road connects with State Route 234 on the northern side of State Route 234. Yellow Hill Road veers off at a greater than 90 degree angle when traveling west on State Route 234. The road is a narrow road with a single yellow line separating the lanes. There are no fog line markings nor shoulder on either side of the road.
>
> 5. As Trooper Thierwechter's observation occurred as he was traveling near the junction with Yellow Hill Road, he did not have sufficient time to make the turn onto Yellow

---

[3] 75 Pa.C.S. § 3802(a)(1).

- 2 -

Hill Road. Rather, he stopped his vehicle and backed up to the point of being able to make a right–hand turn on Yellow Hill Road. The dash cam reveals Trooper Thierwechter stopped his vehicle, backed up to turn onto Yellow Hill Road, and began pursuit.

6. Trooper Thierwechter followed the vehicle briefly. While following the vehicle, he observed it to be weaving within its lane.

7. The dash cam video reveals that Yellow Hill Road is a narrow road with curves and a slightly rolling topography. It also reveals the subject vehicle to be a Ford 4x4 pick-up truck. The video confirms some swerving within the lane of travel. The video also reveals a lack of traveling in a straight direction but rather [ ] weaving even on straight portions of the roadway.

8. Trooper Thierwechter conducted a vehicle stop[,] concerned that the vehicle's travel in the wrong lane and weaving required further investigation as to whether the driver was impaired.

Order, 12/29/15, at 1-2.

The trial court explained that Trooper Thierwechter had reasonable suspicion to stop Appellant's vehicle:

Instantly, Trooper Thierwechter observed a vehicle traveling entirely on the left side of a marked roadway. Subsequent pursuit revealed the vehicle to be weaving within its lane of travel. Independently, the weaving within the lane was *de minimis* at best and, standing alone, insufficient to objectively establish a reasonable suspicion of criminal conduct. However, when coupled with the earlier observation of the vehicle traveling in the left lane of a two-lane roadway for no apparent reason at 1:58 a.m., Trooper Thierwechter had observed articulable facts which justified further investigation. Unquestionably, there are a variety of innocent explanations for the observed conduct[,] including the lack of traffic on an isolated country road or the *de minimis* nature of the observations under the circumstances in which they

- 3 -

occurred. Nevertheless, one would not expect under normal circumstances to observe a vehicle traveling entirely in the wrong lane of travel for no apparent reason. While there are certainly explanations for the conduct, there is also a reasonable articulable basis for Trooper Thierwechter to stop the vehicle for further investigation as to the legality of those reasons.

*Id.* at 3.

Appellant proceeded to a non-jury trial on February 18, 2016, and the trial court found him guilty of the aforementioned DUI charges. On April 18, 2016, the trial court imposed sentence. On April 26, 2016, Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises one issue in this appeal:

Whether the suppression court erred in denying [Appellant's] motion for suppression based upon a vehicle stop where the physical evidence, comprised of an in-car camera recording and photographs of the relevant area, established that the police officer could not see the area where the officer claims he did view the driving that supported the basis of the vehicle stop.

Appellant's Brief at 5.

This Court's standard of review in addressing a challenge to the denial of a suppression motion

is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may

- 4 -

reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of the courts below are subject to [ ] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526–27 (Pa. Super. 2015) (citation omitted).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). In Fourth Amendment jurisprudence, there are three categories of interactions between citizens and the police:

The first [category] is a "mere encounter" (or request for information) which need not be supported by any level of suspicions, but carries no official compulsion to stop or respond. The second, an "investigative detention", must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Gutierrez*, 36 A.3d 1104, 1107 (Pa. Super. 2012) (citation omitted). Reasonable suspicion

is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal

- 5 -

activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

***Commonwealth v. Clemens****,* 66 A.3d 373, 379 (Pa. Super. 2013) (citation omitted).

The legislature has defined the level of suspicion required for vehicle stops as follows:

Whenever a police officer . . . has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). In interpreting this provision, this Court has concluded that a vehicle stop based solely on reasonable suspicion of a motor vehicle violation "must serve a stated investigatory purpose . . . [since, i]n effect, the language of Section 6308(b)—'to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title'—is conceptually equivalent with the underlying purpose of a ***Terry*** stop." ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*) (citations omitted). We examine the totality of the circumstances in the course of reviewing whether an officer had reasonable suspicion to stop a vehicle. ***Commonwealth v. Holmes***, 14

A.3d 89, 96 (Pa. 2011). This test "does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." ***Commonwealth v. Smith***, 917 A.2d 848, 857 n.4 (Pa. Super. 2007) (citation and quotation marks omitted).

Mere reasonable suspicion will not justify a vehicle stop "when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation." ***Feczko***, 10 A.3d at 1291. In this circumstance, the officer must articulate specific facts that he has at the time of the stop which provide probable cause to believe that the vehicle or the driver is in violation of some provision of the Vehicle Code. ***Id.***

Illustrative of the reasonable suspicion and probable cause standards

> are stops for speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance. ***Compare Commonwealth v. Enick***, 70 A.3d 843, 846 (Pa. Super. 2013) (probable cause required to stop for failure to drive on right side of roadway), ***Commonwealth v. Brown***, 64 A.3d 1101, 1105 (Pa. Super. 2013) (probable cause required to stop for failure to use turn signal), ***Commonwealth v. Busser***, 56 A.3d 419, 424 (Pa. Super.

2012) (probable cause required to stop for failure to yield to emergency vehicles), **and Feczko**, 10 A.3d at 1291 (probable cause required to stop for failure to maintain lanes), **with** [**Holmes**, 14 A.3d at 96-97] (reasonable suspicion sufficient to stop to investigate front windshield obstruction), **Commonwealth v. Bailey**, 947 A.2d 808, 812–14 (Pa. Super. 2008) (reasonable suspicion sufficient to stop to investigate faulty exhaust system or muffler); **see also Commonwealth v. Landis**, 89 A.3d 694, 703 (Pa. Super. 2014) (noting that where trooper stopped motorist for failing to drive within a single lane—and not to investigate possible DUI—he needed probable cause to stop).

**Commonwealth v. Salter**, 121 A.3d 987, 993 (Pa. Super. 2015).

Having studied the record, particularly Trooper Thierwechter's dash cam video, we conclude that the record supports the trial court's findings of fact. We also agree with the trial court's conclusions of law. Trooper Thierwechter suspected that Appellant was driving while intoxicated and thus needed reasonable suspicion to stop Appellant's vehicle for further investigation. **See id.** Viewed objectively through the eyes of a trained police officer such as Trooper Thierwechter,[4] the totality of the

---

[4] Trooper Thierwechter has been a state trooper since February 2013. N.T., 11/19/15, at 4. He has undergone extensive training relative to the detection of impaired drivers. **Id.** He made between twenty and twenty-five DUI arrests before Appellant's arrest, and he comes into contact with persons under the influence of drugs or alcohol at least once every week. **Id.** at 5. Although the trial court did not discuss Trooper Thierwechter's background in its findings of fact, we can take this evidence into consideration because it supports the position of the Commonwealth, the prevailing party in the suppression proceeding. **See Jones,** 121 A.3d at 526 ("Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the

circumstances furnished reasonable suspicion to believe that Appellant was driving while intoxicated. The trial court perceptively observed that the minimal evidence of weaving, standing alone, did not provide reasonable suspicion to stop Appellant's vehicle. Nevertheless, the totality of the circumstances—Appellant's act of driving in the wrong lane for no apparent reason, the lateness of the hour, **and** his minimal weaving—provided sufficient reason for Trooper Thierwechter to stop Appellant's vehicle to investigate whether he was intoxicated.

Therefore, we conclude the trial court properly denied Appellant's motion to suppress evidence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/2017

---

evidence for the defense as remains uncontradicted when read in the context of the record as a whole.").