J-S27027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARRETTE DWAYNE HOWARD | : | |
| | : | |
| Appellant | : | No. 1177 EDA 2016 |

Appeal from the Judgment of Sentence March 24, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0007167-2014

BEFORE: GANTMAN, P.J., OTT, J. and PLATT, J.[*]

MEMORANDUM BY OTT, J.: **FILED JULY 10, 2017**

Garrette Dwayne Howard appeals from the judgment of sentence imposed on March 24, 2016, in the Court of Common Pleas of Delaware County following his conviction on charges of possession of a controlled substance (heroin), possession of a controlled substance (heroin) with intent to deliver, and possession of drug paraphernalia.[1] Howard received an aggregate sentence of 42 to 84 months' incarceration. In this timely appeal, Howard claims he was improperly subjected to an investigatory detention and therefore the trial court erred in failing to suppress the evidence obtained from the search of his car. Following a thorough review of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113 (a)(16), (a)(30), and (a)(32), respectively.

submissions by the parties, relevant law, and the certified record, we reverse the order denying Howard's motion to suppress evidence and remand for further proceedings.

We quote the relevant portion of the trial court's recitation of the background of this matter.

> On August 9, 2014, at approximately 12:40 p.m., Trooper [James] Sparenga was on routine patrol in the area of Interstate 95 (I-95) South in the area of Ridley Township when he initiated a traffic stop of a silver Volkswagen, pulling [Howard] over directly in the "gore" adjacent to Exit 4 on I-95 southbound.[2]
>
> Trooper Sparenga approached the vehicle from the passenger side and observed that [Howard] was the driver and sole occupant of the vehicle. Trooper Sparenga testified that as, is his general practice during traffic investigations, he requested license, registration and insurance card from [Howard]. Trooper Sparenga advised [Howard] of the reason for the stop and asked [Howard] various questions. Trooper Sparenga had difficulty understanding what [Howard] was saying, as [Howard] spoke in a low, soft voice[3] and was slow to respond to questions.
>
> [Howard] provided Trooper Sparenga the requested documentation and then extended his hand to shake Trooper Sparenga's hand. Trooper Sparenga noted that [Howard's] hands were "very shaky," and were "wet and clammy." Trooper Sparenga then proceeded back toward his patrol car to process the documentation.

_____

[2] Howard did not challenge the propriety of the traffic stop. The Trooper claimed Howard changed lanes in an unsafe manner, forcing another car to brake suddenly.

[3] Trooper Sparenga testified he had trouble hearing Howard over the traffic noise of I-95. Specifically, "I could hardly hear, being out on I-95. I had to tell him several times to speak up, like you asked me to speak up today." N.T. Suppression Hearing, 6/18/2015 at 25.

Upon returning to his patrol vehicle, Trooper Sparenga performed an NCIC search revealing [Howard's] criminal history as a convicted felon.[4]  During the time that Trooper Sparenga was processing [Howard's] documents, he made a radio request for police backup for officer safety purposes.[5]

After Trooper Sparenga processed the documentation, he exited his patrol vehicle, approached the passenger window of [Howard's] vehicle, and requested that [Howard], who was still seated in the driver's seat, to step around [to] the back of the vehicle.  [Howard] complied with Trooper Sparenga's request and Trooper Sparenga and [Howard] met at the rear of the silver Volkswagen, in front of the patrol vehicle.  Trooper Sparenga returned identification documents to [Howard] as he explained and showed [Howard] the written warning.  [Howard] simultaneously reached out to shake Trooper Sparenga's hand.  Trooper Sparenga noticed that, again, [Howard's] hands were shaking, wet and clammy.  Trooper Sparenga mentioned to [Howard] that he seemed nervous and asked if there was anything else going on that he needed to know about.

Trial Court Opinion, 9/26/2016, at 2-3.[6]

Based on the above evidence, the trial court determined that because Trooper Sparenga, after returning the documents to Howard and explaining the warning to him, never told Howard he was free to leave and continued

_____

[4] Specifically, "The NCIC related that [Howard is] a prior felon for shoplifting."  N.T. Suppression Hearing, 9/18/2015, at 13.

[5] Trooper Sparenga requested backup because he had already determined he was going to ask Howard for consent to search his vehicle.  *See* N.T. Suppression Hearing, 6/18/2015, at 32.

[6] The trial court provided additional findings of fact, found on pages 4-5 of the trial court opinion.  However, those facts were developed after the traffic stop had transitioned into the investigative detention.  Therefore, those facts are immaterial to our analysis, which is to determine whether the investigative detention was supported by reasonable suspicion.

contact with Howard in a seamless manner, Howard, at that time, was subject to an investigatory detention. ***See*** Trial Court Opinion at 7. The trial court further found that the investigatory detention was supported by a reasonable suspicion that criminal activity was afoot. This finding, in turn, allowed the Trooper to seek permission to search Howard's car. Accordingly, the trial court found no cause to suppress the physical evidence obtained as a result of that search.

Initially, we relate our scope and standard of review.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
>
> ***Commonwealth v. Williams***, 2008 PA Super 6, 941 A.2d 14, 26-27 (Pa. Super. 2008) (*en banc*) (citations, quotations, and quotation marks omitted). Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony. ***See Commonwealth v. Clemens***, 2013 PA Super 85, 66 A.3d 373, 378 (Pa. Super. 2013).
>
> ***Commonwealth v. Roberts***, 133 A.3d 759, 771 (Pa. Super. 2016), *appeal denied*, 145 A.3d 725 (Pa. 2016). Furthermore, our Supreme Court in ***In the Interest of L.J.***, 622 Pa. 126, 79 A.3d 1073, 1085 (2013), clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing.

*Commonwealth v. McCoy*, 154 A.3d 813, 815-16 (Pa. Super. 2017).

Here, Howard claims that the investigative detention was not supported by any reasonable suspicion of criminal activity. Therefore, Howard argues, his consent to search his vehicle was invalid and the evidence obtained therefrom must be suppressed.

As noted above, the trial court determined that Howard was subject to an investigatory detention once Trooper Sparenga returned Howard's paperwork to him, gave him the warning and finished explaining the warning to him. Specifically, the trial court stated:

> This court finds that the Trooper never expressly informed [Howard] that he was free to leave the scene, [Howard] was still standing outside his vehicle, and Trooper continued contact with [Howard] in a seamless interdiction. [Howard] was subjected to an investigatory detention.

Trial Court Opinion, 9/26/2016, at 7.

We agree with the trial court's finding in this regard. *See Commonwealth v. Kemp*, 961 A.2d 1247, 1253-54 (Pa. Super. 2008) (describing transition from traffic stop to investigative detention).[7] The salient question now becomes whether Trooper Sparenga possessed a reasonable suspicion of criminal activity to support that investigative detention.

_____

[7] The fact that Howard was subjected to an investigatory detention is not instantly at issue. Accordingly, we need not delve into an analysis of that legal issue.

Reasonable suspicion has been defined as follows:

> [T]he officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot ... In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

**Commonwealth v. Smith**, 917 A.2d 848, 852 (Pa. Super. 2007) (citations omitted). The officer "may ask the detainee a moderate number of questions" during a traffic stop "to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." **Berkemer v. McCarty**, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). "[I]f there is a legitimate stop for a traffic violation ... additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions." **Commonwealth v. Chase**, 599 Pa. 80, 960 A.2d 108, 115, n.5 (2008). Even innocent factors, viewed together, may create reasonable suspicion that criminal activity is afoot. **See Commonwealth v. Caban**, 60 A.3d 120, 129-30 (Pa. Super. 2012) (following valid traffic stop for speeding, officer had reasonable suspicion of criminal activity to justify continued detention of driver and passenger; driver acted nervously, car was owned by third party not present in vehicle, answers provided by driver and passenger to basic questions regarding their destination were inconsistent, and various masking agents, including air fresheners, canisters of perfume, and bottle of odor eliminator, were present in vehicle).

**Commonwealth v. Rudolph**, 151 A.3d 170, 178, n. 2 (Pa. Super. 2016).

Additionally,

Thus, we find no basis to conclude that excessive nervousness and furtive movements, even considered together, give rise to reasonable suspicion of criminal activity. A police officer's observation of a citizen's nervous demeanor and furtive movements, without more, establishes nothing more than a "hunch," employing speculation about the citizen's motive in the place of fact. Were we to validate such a practice, we would open every occupant of a motor vehicle in this Commonwealth to law enforcement officers' wholly subjective interpretation of inoffensive conduct, and undermine our Supreme Court's time-honored insistence that police officers may stop our citizens only on the basis of objective criteria. *See Sierra*, 723 A.2d at 647; DeWitt, 608 A.2d at 1034. This we cannot do. This we will not do.

*Commonwealth v. Reppert*, 814 A.2d 1196, 1206 (Pa. Super. 2002).

With these standards in mind, we examine the trial court's stated reasoning to determine if it is supported by the facts of record and comports with legal precedent. The trial court stated:

Trooper Sparenga testified to reasonable suspicion beyond the original reasonable suspicion, which led to the traffic stop. The Trooper provided the Court with unrebutted, credible testimony. The facts adduced by Trooper Sparenga during the valid traffic stop provided him with sufficient reasonable suspicion that criminal activity was afoot, justifying the continuing investigatory detention. The facts included:

Initially, Trooper Sparenga noted that [Howard] appeared extremely nervous, spoke in a low voice, was slow to answer questions, and that [Howard's] hands were physically shaking and were wet and clammy when he handed over his documents to Trooper Sparenga and shook his hand. Trooper Sparenga discovered through NCIC search that [Howard's] status as a convicted felon [sic]. Howard's hands were still shaking and clammy during the second handshake. [Howard] provided Trooper Sparenga with a myriad of unsolicited information entirely unrelated to their conversation.

Trial Court Opinion, 9/26/2016, at 8-9.

Our review of the certified record shows that the "unsolicited information" was not relayed until after the inception of the investigatory detention. Accordingly, that factor cannot be used to support the detention in the first place.[8] *See Commonwealth v. Chase*, 960 A.2d 108, 115 n.5 (Pa. 2008) ("additional suspicion may arise *before the initial stop's purpose has been fulfilled*; then, detention may be permissible to investigate the new suspicions.") (emphasis added). Therefore, the information of record that Trooper Sparenga possessed prior to the investigatory detention is that Howard displayed nervous behavior and had previously been convicted of a charge of felony shoplifting.

The law is clear that merely exhibiting nervous behavior cannot support reasonable suspicion to support an investigatory detention. While nervous behavior can be considered, there must be more. Instantly, the only "more" is a conviction for shoplifting.

Trooper Sparenga never testified as to what specific criminal activity he suspected was afoot. However, neither he, the Commonwealth, nor the trial court provide any logical or legal connection between prior shoplifting

_____

[8] Further, we have viewed the video submitted as evidence. It does not support the trial court's statement that Howard "provided Trooper Sparenga with a myriad of unsolicited information entirely unrelated to their conversation." *See* Trial Court Opinion at 9. Trooper Sparenga asked Howard why he was nervous and Howard related how a prior arrest had been resolved, yet remained open causing him problems with law enforcement. Howard was worried that such was the case instantly. This response was directly relevant to Trooper Sparenga's inquiry.

conviction and a reasonable suspicion of criminal activity at a traffic stop on an interstate highway. Without that connection, we are unwilling to presume that any prior conviction automatically provides authorities with grounds to detain a citizen.[9] In its brief, the Commonwealth has acknowledged that nervous behavior, furtive movement (not present instantly)[10] and a prior drug conviction, does not support reasonable suspicion for an investigatory detention.[11] If the presence of those factors cannot support an investigatory detention, then we cannot see how nervous behavior, a shoplifting conviction and no furtive movements can support an investigatory detention.

Because the investigative detention of Howard was unsupported by a reasonable suspicion that criminal activity was afoot, all evidence obtained as a result of that improper detention must be suppressed. Accordingly, the

_____

[9] Clearly, prior convictions can be relevant to determining reasonable suspicion. For example, in **Commonwealth v. Rogers**, 849 A.2d 1185 (Pa. 2004), cited by the Commonwealth, the defendant was nervous, had shaking hands, provided incomplete, inconsistent and false information regarding his car, had a prior drug conviction and had items in the car typically used to mask the smell of marijuana. In **Rogers**, the drug conviction was especially relevant in light of other information that generally suggested criminal activity and specifically suggested drug trafficking. **None** of those additional factors are present instantly.

[10] Trooper Sparenga testified that Howard displayed no suspicious activity in his car while the trooper was conducting the background check. **See** N.T. Suppression Hearing, 6/18/2105, at 30.

[11] **Commonwealth v. Moyer**, 954 A.2d 659 (Pa. Super. 2008).

trial court's order denying Howard's motion to suppress evidence must be reversed, and Howard's judgment of sentence must be vacated.

Order reversed; judgment of sentence vacated; this matter is remanded to the trial court for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2017