J-S16002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT THOMAS, JR. | |
| Appellant | No. 1208 WDA 2015 |

Appeal from the Judgment of Sentence July 9, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0011012-2012

BEFORE:  MOULTON, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY MOULTON, J.:                      **FILED JUNE 20, 2017**

Robert Thomas, Jr. appeals from the July 9, 2015 judgment of sentence entered in the Allegheny County Court of Common Pleas following his bench trial convictions for delivery of a controlled substance, possession with intent to deliver a controlled substance ("PWID"), intentional possession of a controlled substance, and false identification to a law enforcement officer.[1]  We affirm.

The well-reasoned opinion of the Honorable Randal B. Todd set forth the factual and procedural history underlying this appeal, which we adopt and incorporate herein.  **See** Trial Ct. Op., 7/13/16, at 1-6 ("1925(a) Op.").

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) (delivery and PWID) and (a)(16), and 18 Pa.C.S. § 4914(a), respectively.

Thomas raises two issues on appeal:

1. Did the lower court err in failing to grant the motion to suppress evidence seized from Mr. Thomas insofar as the police lacked probable cause to arrest him, and no reasonable suspicion to believe that he was armed? Was the subsequent warrantless search and seizure of his person, as well as police interrogation, unlawful under the Fourth Amendment to the United States Constitution and Article 1, Section 8, of the Pennsylvania [Constitution]? And was not all evidence seized thereafter "fruit of the poisonous tree" and inadmissible as a matter of law?

2. Was the evidence presented insufficient as a matter of law to support the convictions for PWID and Possession of a Controlled Substance because the Commonwealth failed to prove beyond a reasonable doubt that the drugs found in possession of another man had come from Mr. Thomas?

Thomas's Br. at 6.

First, Thomas argues that the trial court erred in denying his motion to suppress. In reviewing the denial of a suppression motion, we must determine

whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law

to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal quotations and citations omitted).

Thomas argues that when he was seized and placed under arrest, the police lacked probable cause to arrest him. According to Thomas, Officer William Mudron's testimony failed to establish he had probable cause because, although he explained his training and experience, he did not explain "how that training and experience specifically applies to [the arrest made here.]" Thomas's Br. at 20. Further, Thomas contends that the totality of the circumstances did not give Officer Mudron probable cause because Officer Mudron only observed, from 75 to 100 feet away, a man approach a parked car with two men inside and an exchange of money for an object. We disagree.

In its opinion, the trial court applied the relevant law and properly determined that the evidence should not be suppressed. *See* 1925(a) Op. at 6-8. The trial court found that: the facts of this case are similar to those in *Commonwealth v. Thompson*, 985 A.2d 928 (Pa. 2009); Officer Mudron explained the nexus between his training and experience and Thomas's arrest; and probable cause supported the arrest. The record supports the trial court's findings of fact and credibility determinations. *See Commonwealth v. Krisko*, 884 A.2d 296, 299 (Pa.Super. 2005) ("[I]t is exclusively the province of the suppression court to determine the credibility of the witnesses and weight to be accorded their testimony."). After

reviewing the briefs, the record, and the relevant law, we conclude that the trial court did not err and affirm based on the trial court's reasoning. ***See*** 1925(a) Op. at 6-8.

Next, Thomas argues that the Commonwealth's evidence was insufficient to support convictions for PWID and possession of a controlled substance. This Court's standard for reviewing sufficiency of the evidence claims is as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Rodriguez***, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting ***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa.Super. 2012)).

Thomas asserts that the Commonwealth failed to prove his possession of the drugs beyond a reasonable doubt because police recovered the packets of heroin from another person. According to Thomas, Officer

Mudron only saw, from 75 to 100 feet away, the exchange of cash for an item and, therefore, Officer Mudron's testimony failed to prove beyond a reasonable doubt that Thomas had possessed the drugs and passed them to the man who approached the vehicle. We disagree.

Section 780-113(a)(16) of the Controlled Substance, Drug, Device, and Cosmetic Act ("Act") prohibits

> [k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-113(a)(16). Section 780-113(a)(30) of the Act prohibits the "possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board[.]" *Id.* § (a)(30). "The Commonwealth establishes the offense of [PWID] when it proves beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it." *Commonwealth v. Little*, 879 A.2d 293, 297 (Pa.Super. 2005). "[A]ll of the facts and circumstances surrounding the possession are relevant and the elements of the crime may be established by circumstantial evidence." *Id.*

In its opinion, the trial court addressed Thomas's claims and properly determined that the evidence was sufficient to support Thomas's convictions for PWID and possession of a controlled substance. 1925(a) Op. at 8-10.

The evidence presented by the Commonwealth showed that Officer Mudron, an experienced officer with training in narcotics, was patrolling a high drug-trafficking area when he saw Thomas exchange white packets with another person for cash, which Thomas then placed in his left pants pocket. Police recovered four white packets, later determined to be heroin, from the buyer's mouth, and found $40 in Thomas's left pants pocket, which Officer Mudron testified was consistent with the average price in that area of $10 per packet of heroin. After reviewing the briefs, the record, and the relevant law, we affirm based on the trial court's reasoning. *Id.* at 8-10.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/20/2017

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,    )
                                 )
        vs.                      )        NO.  CC201211012
                                 )
ROBERT THOMAS, JR,               )
                                 )
        Defendant.               )

TODD, J.

July 13, 2016

## OPINION

This is an appeal by Defendant, Robert Thomas, after he was found guilty on July 9, 2015 after a non-jury trial of Possession with Intent to Deliver a Controlled Substance in violation of 35 Pa.C.S. § 780-113(a)(30); Possession of a Controlled Substance in violation of 35 Pa.C.S. § 780-113(a)(16); and False Identification to Law Enforcement in violation of 18 Pa.C.S. § 4914. Defendant was sentenced on July 9, 2015 to 2 to 4 years incarceration and 5 years probation He was sentenced to one year probation for False Identification to Law Enforcement. On August 10, 2015 Defendant filed a Notice of Appeal. On August 13, 2015 an order was entered for Defendant to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On November 23, 2015 Defendant filed his Concise Statement of Matters Complained of on Appeal setting forth the following:

"A.    The court erred in failing to grant the motion to suppress evidence seized from Mr. Thomas' person insofar as the police lacked probable cause to arrest him, and no reasonable suspicion to believe that he was armed; and therefore, the subsequent warrantless search of his person and interrogation were unlawful pursuant to the Fourth Amendment and

1

Article 1, Section 8 of the Pennsylvania Constitution; and any evidence obtained pursuant to the unlawful arrest and search constituted the "fruit of the poisonous tree". In addition, the police lacked probable cause to seize the vehicle at the scene and order a passenger to pit out the contents of his mouth; and any evidence obtained pursuant to the unlawful seizures.

B.  The evidence was insufficient to support the convictions of Possession with Intent to Deliver a Controlled Substance and Possession of a Controlled Substance insofar as the Commonwealth failed to prove beyond a reasonable doubt that the drugs found in the possession of another male who was in the vehicle nearby, were in the possession of Mr. Thomas, and/or that Mr. Thomas gave the drugs to the other male in the vehicle stopped by the police. The police were more than 100 yards away when Mr. Thomas allegedly approached a vehicle, could not have seen any exchange of items between Mr. Thomas and a passenger of the vehicle, or at least could not have seen whether and what items were exchanged. No fingerprints of DNA were offered into evidence to link the drugs found on the passenger of the vehicle to Mr. Thomas. In addition, the Commonwealth did not establish any credentials of the officer who testified with regard to the cost of the heroin at the time, or offer any basis for the officer's testimony that he identified the square packets he claimed he saw in Mr. Thomas' hand as heroin."

## BACKGROUND

This matter arises out of Defendant's arrest on August 14, 2012 after he was observed by undercover police officers selling drugs. Defendant filed a motion to suppress on the basis that the police lacked probable cause to arrest him. At the suppression hearing the Commonwealth presented the testimony of Officer William Mudron who testified that on August 14, 2012 he was working with other officers in an Impact Squad in plain clothes and in an unmarked vehicle. At approximately 5:25 p.m. he was on patrol in the 200 block of Hammond Street in the City of Pittsburgh. Officer Mudron described the area as:

"That area's known as a high drug trafficking area. We made numerous arrests in that location prior to and conducted search warrants on residences in that block, that particular block. At that time we set up in an alleyway to do surveillance on a vehicle that was sitting there." (T., p. 5)

2

Officer Mudron testified that he has made numerous drug arrests in the past and that he had specialized training in drug investigations, having gone through "Top Gun," which he described as "the best training you can get in PA in reference to narcotics." (T., p. 9)

Officer Mudron testified that the officers were in the alley when they observed a vehicle parked along Hammond Street for approximately five to seven minutes. As he was watching the vehicle a black male, later identified as Defendant, began walking towards the officers' vehicle, which was similar in color to the parked vehicle which was under surveillance. Defendant at first walked towards the unmarked police vehicle and then continued towards the vehicle parked on Hammond Street. Officer Mudron testified:

> "There was two males [in the vehicle] facing up Hammond. He walked to the passenger's side, which was out in the roadway. At that time he reached out of his right pocket, handed the passenger four square baggies, which were white. To us we know it to be heroin. At that time he gathered cash, an unknown amount of cash at that time from the passenger and placed that cash into his left pocket. He began walking away from that passenger window back up Hammond." (T., p. 6)

Officer Mudron testified that upon observing the transaction they immediately pulled their police vehicle out of the alley and Officer Mudron then confronted Defendant and arrested him. Officer Mudron testified:

> "I immediately placed Mr. Thomas into handcuffs, explained to him, you know, he was going to be under arrest. We watched him just do the deal." (T., p. 7)

While Defendant was being placed under arrest, the other officers approached the passenger of the vehicle and determined that the passenger had white stamp bags of heroin in his mouth. The passenger spit the stamp bags out, which were recovered by the police. (T., pp. 7-8)

In a search incident to the Defendant's arrest, Defendant was found in possession of $771 in currency from his right pocket, an iPhone 4 and in his left pocket were two additional twenty

3

dollar bills. Officer Mudron testified that $40.00 was consistent with the amount of what four bags of heroin would cost. (T., p. 9) Officer Mudron testified:

> "At that particular time in the Sharadan (sic) area, bags of heroin were selling for approximately $10 apiece. The money recovered from the defendant's left pocket was $40. The amount of heroin recovered was four bags, which would be consistent with how much it would cost to buy a bag or four bags of heroin at that time in 2012." (T. pp. 9-10)

Officer Mudron also testified that upon Defendant's arrest he gave a false name, using the name of another individual who Officer Mudron had previously arrested and, therefore, knew that Defendant had given a false name. (T., p., 10)  Defendant eventually gave his correct name and date of birth.  It was stipulated that the items recovered and tested were, in fact, heroin. (T., p. 10)

On cross-examination Officer Mudron testified that the police vehicle was approximately 75 to 100 feet away from the parked vehicle when he observed the transaction between Defendant and the occupant of the vehicle. (T., p. 15) Officer Mudron reiterated that despite the distance he was definitely able to observe the transaction including the small packages of white material in that Defendant handed to the passenger in the vehicle. Officer Mudron testified as follows:

> "Q.     What are you having us believe?  That he turned his and - -
>
> A.     He reached into his right pocket, pulled it out of his right pocket and handed it like he would hand a dollar bill to somebody.  He didn't at any time reach into his pocket with a fist.  he would have never been able to reach into his pocket.  He handed it like a dollar bill to the passenger of the vehicle, and the passenger then exchanged the money with him.
>
> Q.     My question to you is, where is it that you would have seen it?  Was it in his hand or in the hand of the passenger?
>
> A.     It was in the defendant's hand.
>
> Q.     Okay.  Is this when he's extending his hand out toward the passenger?

4

A.     That's correct.  Before it ever meets the window.

Q.     Okay.  You see four packets?  Is that what you're telling us?

A.     I saw white square packets.  I couldn't see four.

Q.     You didn't know what they were, did you?

A.     I knew they were consistent with heroin.

Q.     I know what you thought and suspected, that they were consistent with something, but you didn't know what they were, did you?  In all honesty, you put in your report you didn't know?

A.     Yeah, believing it was heroin.

Q.     Believing, but you didn't know?

A.     All the things coming together, I believed it to be a heroin drug deal.

Q.     All the things coming together?  What's that?  A black male meeting a white male?

A.     No.  The totality of the circumstances."  (T., pp. 22-23)

At the conclusion of the hearing, Defendant argued that Officer's Mudron's testimony was not credible because from his observation point approximately 75 to 100 away from the parked vehicle, he could not have observed stamp bags in Defendant's hand or identify what was being handed to the occupant of the vehicle and, therefore, there was no probable cause to arrest Defendant.  After consideration of all the evidence the motion to suppress was denied on the basis that the credible evidence and the totality of the circumstances, including Officer Mudron's training and experience, supported a finding that there was probable cause to arrest Defendant. (T., p.

Subsequent to the denial of the suppression motion a stipulated non-jury trial was held. After an appropriate colloquy in which Defendant acknowledged his right to a jury trial the

5

testimony from the suppression hearing was incorporated into the non-jury trial record. (T., pp. 36-41) Defendant's prior criminal record was also admitted into evidence. Defendant was found guilty and sentenced as set forth above. Defendant filed the instant appeal.

## DISCUSSION:

In his concise statement Defendant first raises the claim that it was error to deny his motion to suppress because there was no probable cause to arrest him. The facts in this case are very similar to the facts in *Commonwealth v. Thompson*, 985 A.2d 928 (2009) in which the Supreme Court addressed the issue of a police officer's experience in determining whether or not probable cause existed to arrest after observing a suspected on street drug transaction. The Court in *Thompson* stated that facts as follows:

> "On January 21, 2005, in the evening, Philadelphia Police Officer Orlando Ortiz was on duty in the 2400 block of Leithgow Street. Officer Ortiz knew the neighborhood as a high crime area in which narcotics, and specifically heroin, regularly were sold. The area was designated by the Philadelphia Police Department as an "Operation Safe Streets" neighborhood. Officer Ortiz, a nine-year veteran of the police force, and his partner, Officer Correa, were in plainclothes and driving an unmarked vehicle. Officer Ortiz saw a car parked by the sidewalk and observed Appellant standing in the street by the driver's side door. Officer Ortiz watched Appellant hand the male driver some money and saw the driver give Appellant a small object in return. Based on what he saw on the street and what he knew, including the fact that he had made several hundred narcotics arrests of this very type, Officer Ortiz believed the men were engaged in a drug transaction. Officer Ortiz stopped Appellant and recovered from his pocket a packet of heroin. Officer Correa approached the driver and ultimately recovered two packets of heroin from his hand and an additional 14 packets from his person. *Commonwealth v. Thompson*, 985 A.2d 928, 930 (2009)

The Court referenced the well recognized standards related to finding probable, stating:

> The parties agree that police were required to have probable cause in order to stop, seize, and search Appellant in the manner they did. Thus, we apply the well-established legal standard that governs this matter. Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect

6

has committed or is committing a crime." *Commonwealth v. Rodriguez,* 526 Pa. 268, 585 A.2d 988, 990 (1991). The question we ask is not whether the officer's belief was "correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Rather, we require *only a "probability,* and not a prima facie showing, of criminal activity." *Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (citation omitted) (emphasis supplied). In determining whether probable cause exists, we apply a totality of the circumstances test. *Commonwealth v. Clark,* 558 Pa. 157, 735 A.2d 1248, 1252 (1999) (relying on *Gates, supra* ). *Commonwealth v. Thompson,* 985 A.2d 928, 931 (2009)

After examining various cases dealing with the issue of the factors to be considered in determining whether or not probable cause existed to arrest related to a suspected on street drug transaction, including its 2008 decision in the *Commonwealth v. Dunlap*, 941 A.2d 671 (2008) cert. denied, --- U.S. ---, 129 S.Ct. 448, the Court concluded that:

Upon review of the various *Dunlap* expressions, we recognize the logic and soundness of Justice Saylor's concurring opinion and so hold that "a police officer's experience may fairly be regarded as a relevant factor in determining probable cause." 941 A.2d at 679 (Saylor, J., concurring). We caution, however, that an officer's testimony in this regard shall not simply reference "training and experience abstract from an explanation of their specific application to the circumstances at hand." *Id.* at 681 (Saylor, J., concurring). As the *Dunlap* majority itself observed, "a court cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." *Dunlap,* 941 A.2d at 676. Indeed, a factor becomes relevant only because it has some connection to the issue at hand. The very foundation of the *Gates* totality test is the recognition that all relevant factors go into the probable cause mix. *Commonwealth v. Thompson,* 985 A.2d 928, 935 (2009)

After considering all of the appropriate facts and circumstances the Court concluded that probable cause did exist for the arrest, stating:

Because we have determined that a police officer's experience may be fairly regarded as a relevant factor in determining probable cause, and due to the presence of additional factors in support of Officer Ortiz's conclusion that he was witnessing a drug transaction, we find no error in the Superior Court's conclusion that probable cause was present in this case. We do not base our decision solely on Officer Ortiz's experience and the connection he articulated between that

7

experience and what he observed. We also rely on the fact that the transaction at issue occurred in the nighttime hours, on the street, in a neighborhood that the police department selected for the "Operation Safe Streets" program. We conclude that the Superior Court properly upheld the denial of suppression in this case and properly affirmed the judgment of sentence. *Commonwealth v. Thompson*, 985 A.2d 928, 936-37 (2009)

In this case, Officer Mudron, testified that he had two and half years experience on the Impact Squad, which is referred to as Unit 99, and that the majority of the work is related to narcotics investigations. He had also undergone training at "Top Gun," which he described as the "best training you can get in PA in reference to narcotics." He made numerous prior drug arrests and the area where Defendant was arrested was known to him as a "high drug trafficking area" in which he had made numerous arrests and he had conducted searches for drugs activity on the same block of Hammond Street where the vehicle in question was under surveillance. He observed Defendant approach the vehicle that had been sitting parked on Hammond Street for several minutes and watched as Defendant took small white packages from his right pocket, hand them to the passenger and receive cash in exchange before walking away from the vehicle. Despite Defendant's argument to the contrary, Officer's Mudron's testimony concerning his observations of the transaction was credible. His testimony established a nexus between his experience as a trained narcotics officer, the location of the transaction and Defendant's involvement in the transaction, as described, to lead to the conclusion that probable cause existed to arrest Defendant.

Defendant next contends that the evidence was insufficient to support the conviction of Possession With Intent to Deliver or Possession of Controlled Substance because the Commonwealth failed to prove that the drugs found in the possession of the passenger were in the possession of Defendant or that Defendant gave the drugs to the passenger in the vehicle. When reviewing a sufficiency of the evidence claim the evidence must be viewed in the light

8

most favorable to the Commonwealth, as verdict winner, to determine if there is sufficient evidence to enable a fact-finder to find every element of the crime charged beyond a reasonable doubt. *Commonwealth v. McNair,* 603 A.2d 1014 (1992). It is exclusively within the province of the fact-finder to believe none, some or all of the evidence presented. *Commonwealth v. Henry,* 569 A.2d 929, 939 (1990); *Commonwealth v. Jackson,* 485 A.2d 1102 (1984). If the fact finder reasonably could have determined from the evidence presented that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict. *Commonwealth v. Wood,* 637 A.2d 1335, 1343 (1994) *Commonwealth v. Hopkins,* 747 A.2d 910, 914 (Pa. Super. 2000)

Defendant argues that Officer Mudron was more than 100 yards away and could not have seen what the items were that were exchanged between Defendant and the passenger of the vehicle. Initially, it is noted that, in fact, Officer Mudron testified that he was only 75 to 100 feet away, not a 100 yards, and had a clear view of the exchange and noted that there were small white packets that were being exchanged between Defendant and the passenger. He also testified that he saw the passenger hand money to the Defendant. Immediately upon the exchange of the funds the police apprehended Defendant, as well as the passenger, and four stamp bags of confirmed heroin were recovered from the passenger's mouth. Officer Mudron credibly testified that $40.00 was recovered from Defendant's left pocket, the same pocket in which he saw the cash being placed during the transaction that he had just witnessed. He also testified that this was was consistent with the price of the four stamp bags of heroin recovered from the passenger. This evidence is clearly sufficient to establish that Defendant was in possession of the heroin and sold it to the passenger in the vehicle. The fact that there were no drugs or drug paraphernalia found on Defendant at the time of the arrest does not negate the fact

9

that the evidence, and all reasonable inferences therefrom, indicates that Defendant had both possessed and sold the heroin to the passenger in the vehicle. In addition, the fact that there were no fingerprints or DNA evidence offered to link the drugs found on the passenger to Defendant is irrelevant. It is recognized that the mere absence of DNA on tested items is not conclusive evidence that a Defendant may not have been involved in the crime. As noted in *Commonwealth v. Conway* 14 A.3d 101, (Pa. Super. 2011), reargument denied (Mar. 16, 2011), appeal denied, 29 A.3d 795 (2011) "In DNA, as in other areas, an absence of evidence is not evidence of absence."

Finally, as to Defendant's contention that the Commonwealth did not establish any credentials of the officer who testified with regard to the cost of the heroin, this assertion is contradicted by the evidence. Officer Mudron testified concerning his experience in narcotics investigations and arrests as set forth in detail above and it was Officer Mudron who testified as to the cost of the heroin. Therefore, based on all the evidence it is clear that the Commonwealth met its burden of proving the charges of Possession With Intent to Deliver and Possession of a Controlled Substance.

BY THE COURT:

_____

TODD, J.